## SARPY v. PAPIN.

1. Ejectment. Plaintiff claimed under a patent from the United States, dated 15th June, 1826. The defendant claimed under the act of congress of July 4th, 1836. Held : that as the latter act expressly excepted lands that had been surveyed and sold by the United States, the patent, whether valid or not, must prevail against the defendant, claiming under the act of congress. The act of July 4th, 1836, was clearly a gratuity, and as such, congress chose to prescribe the terms on which their bounty could be obtained.

2. A patent may be void, because it is issued without any authority of law, or by an officer not authorised by law ; or, because the title was not in the United States : or, perhaps, where the land has been expressly reserved from sale ; but the validity of the patent cannot be impeached by one resting on a mere naked possession, and the defendant here, so far as this principle is involved, stands only on his possession. (See Hunter v. Hemphill, 6 Mo. R. p. 106.)

Error to St. Charles Circuit Court.

*Opinion of the Court, delivered by Napton, Judge.*

This was an action of ejectment brought by Papin against Sarpy, to recover a tract of land in St. Louis county. The plaintiff gave in evidence a patent from the United States, dated 15th June, 1826, and a plat of survey; and proved that the defendant was in possession at the commencement of the suit. The defendant gave in evidence the proceedings of the board of commissioners on the claim of Pierre Francis Davolsey to the land in dispute, recommending the same for confirmation ; and the claim was confirmed by act of congress of 4th July, 1836. Notice of this claim was

MAY TERM.
1842.

Sarpy v.
Papin.

filed with the recorder of land titles on the 28th November, 1802.

Depositions were read, showing that Davolsey had. cut wood and grass upon the land in 1769, and several succeeding years, but had never inhabited or cultivated the same. The claim of one Brazeau, which was confirmed by act of congress of 4th July, 1836, was also read in evidence. Letters from the commissioner of the general land office, directing the register and recorder of the land district in which the land in dispute was located, to reserve from sale all land made fractional by unconfirmed private claims, were also read in evidence. These letters were dated in September, 1823, and were found on file in the records of the land office at St. Louis.

On the motion of the plaintiff, Papin, the circuit court instructed the jury, that the patent of Papin was a better legal title than the claims of Davolsey and Brazeau, as confirmed by the act of 4th July, 1836. The defendant asked the court to instruct the jury that the patent of Papin vested in him no title. This instruction was refused.

No other questions are presented here, except such as arise on the instructions, and facts preserved by the record. The instruction given by the court involves a simple inquiry between the rights accruing by the act of 4th July, 1836, and those conferred by a patent for the same land in 1826. The second section of the act of 4th July, 1836, provides, "that if it shall be found that any tract or tracts confirmed as aforesaid, or any part thereof, had been previously located by any other person or persons, under any law of the United States, or had been surveyed and sold by the United States, this act shall confer no title to such lands, in opposition to the rights acquired by such location or purchase, but the individual or individuals whose claims are hereby confirmed, shall be permitted to locate so much thereof as interferes with such location or purchase, on any unappropriated land of the United States. &c."

Ejectment.
Plaintiff claimed under a patent from the United States,

It is contended on behalf of the defendant, that this section only embraces such sales and locations as were made in strict conformity to law. Let us see how this construction

would stand with the known intent and object of the law. The whole history of national legislation on the subject of these claims, evinces the willingness of congress to part with the title of the United States, without looking narrowly into the merits of claims, provided they can do so without compromising the rights of third parties. This act, like others of a similar character, was clearly a gratuity, and, as such, congress chose to prescribe the terms on which their bounty could be obtained. Liberality to the claimants was not designed to work the grossest injustice to others equally meritorious. It was not intended to invest the claimants with a title by which they could immediately eject another claimant, who had the additional merit of having paid his money into the public treasury, and obtained his patent. It mattered not, whether that patent was valid or not; so far as any title was invested by the act of 1836, that patent could not be avoided. Any other construction would defeat the design of congress. If the locator, or patentee, had an unimpeachable title, he needed no aid from congress, and any reservation in his favor would have been useless. Moreover, it appears that ever since the year 1811, these claims have been expressly reserved from sale, except, perhaps, during one or two short intervals in 1826 and '30. No regular and legal locations, or entries, could therefore have been made; and yet congress, with a full knowledge that numerous locations had been made on these claims, (for the fact had been communicated by the board of commissioners,) and with their own previous enactments before them, reserving these lands from sale and location, enacted the second section of the act of 1836, stipulating for the security of the locations and sales, and making ample provisions for the rights or claims confirmed, by giving the claimants a choice of equivalent portions of the public domain.

The court is therefore of opinion that the instruction given by the circuit court was correct.

In relation to the instruction which the court refused to give, at the instance of the defendant, we must look into the record and see if the facts preserved therein would have authorised the court to declare the patent void. A patent may

MAY TERM.
1842.

Sarpy v.
Papin.

dated 15th June, 1826. The defendant claimed under the act of congress of July 4th, 1836. Held, that as the latter act expressly excepted lands that had been surveyed and sold by the United States, the patent, whether valid or not, must prevail against the defendant, claiming under the act of congress The act of July 4th 1836, was clearly a gratuity, and, as such, congress chose to prescribe the terms on which their bounty could be obtained.

be void, because it is issued without any authority, or by an officer not authorised by law; or, because the title was not in the United States. If the decision of the supreme court of the United States, in Wilcox v. McConnell's lessee, (10 Peter's R.) is to be considered as settled doctrine in that court, we may also add that where lands have been expressly reserved from sale, an entry of such lands with the register and receiver is void. But, as in that case, the purchase had not been consummated by the issuing of a patent, we are left to conjecture whether the court would have applied their principles to a patent issued under circumstances similar to those in which this entry was made. The question was noticed by this court in the case of Hemphill v. Hunter, (vol. 6, p. 106, Mo. R.) but not decided; nor do I think it necessarily involved in the determination of this case. It was however held in this last case that a stranger, resting on mere possession, should not go behind an entry, for the purpose of showing that in the preliminary stages of the title the subordinate officers of the government had not complied with the law, a fortiori; such investigations could not be allowed to impeach a patent.

In this case, it seems from the record, that when the patent issued, the land was public land. The act of 26th May, 1824, by its provisions in the 5th and 7th sections, declares, that this land on the 26th May, 1826, should be held public land, and liable to be sold like any other public lands of the United States. It was conveyed by patent on the 16th June, 1826. It was not reserved land at the time of this conveyance. Proof that this land was entered previous to the 26th May, 1826, or, in other words, that the negotiations between the agents of government and the purchaser in relation to this sale, the payment of the money, and the transfer of the certificate, took place at a time when, by law, such proceedings were irregular and illegal, would seem essentially to conflict with the spirit of the rule adopted by this court in the case of Hemphill v. Hunter. These are the very irregularities within the meaning of that rule, which should not be permitted to invalidate the title of a purchaser, when attacked by one who pretends to no title himself, other than what

possession gives him. Such I take to be the law, where the contest is between a stranger to the title and the patentee; and Sarpy, so far as the present branch of the inquiry is concerned, stands only on his possession. These observations will apply to the instructions issued by the direction of the Secretary of the Treasury, to the land officers, in 1823. These instructions were based upon the law of 1811, and designed to carry out the provisions of that law. When these claims were brought into market in 1826, the instructions necessarily became no longer applicable, and whether superceded or not is of no consequence to the rights of the plaintiff. The act of 13th June, 1812, has also been relied on to show the invalidity of this plaintiff's patent. If the claim of Davolsey was confirmed by this act, it is clear that the patent was void, and the court should so have instructed the jury. Yet o instruction directly touching this title under the act of 13th June, 1812, appears to have been asked of the circuit court; and the very scanty and unsatisfactory character of the testimony on this head would appear to have presented a narrow ground upon which to base so broad and decisive an instruction. One or two witnesses deposed, that in 1769, and for some years thereafter, Davolsey was in the habit of getting firewood and cutting prairie grass on the land, but neither occupied or cultivated it. I apprehend that the act of 1812 contemplated something more than a bare possession in law, or such possession as by the common law was supposed to follow title, and the facts deposed to would not of themselves constitute any species of possession, except under certain circumstances, when they might amount to a constructive possession. On this point there is nothing on the record to warrant this court in reversing the judgment of the circuit court. An outstanding title in the school commissioners is also suggested as affording a sufficient reason for warranting the instruction which the defendant asked of the circuit court. There appears to be nothing in the record to support this position.

Judgment affirmed.

