## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

AT THE JANUARY TERM, A. D. 1855.

**CONTINUED FROM VOL. XV.**

---

## GAINES ET AL. VS. HALE.

Under the statute, (*Digest, chap.* 60,) a certificate of entry of public land, and payment of the purchase money, is sufficient evidence of a legal title, unless such entry was void, to enable the purchaser to maintain an action of ejectment.

The Register and Receiver of the Land Office having rejected a claim to pre-emption, on appeal to the Commissioner of the General Land Office, the entry was ordered to be allowed, under directions of the Secretary of the Interior, to enable the pre-emption claimant to contest the title with other claimants, for the same land: HELD, That the entry was not void.

A right to pre-emption had accrued under the act of Congress of 29th May, 1830: the pre-emptor was unable to make proof of settlement, &c., as required by law, because the surveys had not been made, and the plats filed in the Land Office; the land was reserved from sale by act of Congress of 20th April, 1832, before the passage of the act of 14th July, 1832, extending the benefits of the act of 29th May to those who were unable to make proof, because the surveys had not been made: HELD, That the rights of the pre-emption claimant were not affected by the subsequent reservation of the land.

2B

*Appeal from the Circuit Court of Hot Spring County.*

Hon. SHELTON WATSON, Circuit Judge.

WATKINS & CURRAN, and GALLAGHER, for appellants.

1. The question presented for the consideration of this court, is, whether the papers, offered in evidence, show such *prima facie* title in the plaintiffs as authorized them to maintain ejectment. That they do show sufficient title, and were competent evidence, *vide Digest* 454, sec. 2; *McClairen vs. Wicker*, 3 *Eng.* 195; *Morton vs. Reeder*; 5 *Miss. R.* 356; *Jackson vs. Wilcox*, 1 *Scam. R.* 344; *S. C.* 13 *Peter's R.* 516; *Bullock vs. Wilson*, 5 *Porter* 328; 6 *Missouri R.* 106; 2 *Porter* 436; 5 *Porter* 245; 1 *Wash. C. C. R.* 207; 2 *ib.* 354, 160, 33; *Coxs vs. Stewart*, 1 *Stew-art* 379. The recent case of *Floyd vs. Ricks*, 14 *Ark.* 286, settles the principal question involved in this case; that case goes further, and holds that our statute makes an entry a legal title in *any* action.

If the title we offer is a *legal* title, no *equitable* title could, *in this action*, be set up in opposition to it.

In ejectment, the *legal* title always prevails and an *equitable* title is not regarded.

The *legal* title always prevails in the action of ejectment.

Our statute makes this a *legal title.* It is not necessary that we should contend that it is a *paramount* or *conclusive* title; it is sufficient that it is *prima facie*, and good against the world except the United States. *Jackson vs. Wilcox*, 13 *Peters* 516; *Bagnell vs. Broderick*, *ib.* 436.

2. The decision of the Circuit Court in this case, seemed to be based upon the ground that, as the act of 20th April, 1832, reserved this land from sale, the acts of the Executive Department, in permitting this entry, were void.

It is a sufficient response to this, to say: that the entry was

permitted under the pre-emption act of the *29th May*, 1830, and our title has *relation to that day*—which was long before the reservation act of 20th April, 1832. That the title has *relation* to its inception, vide *McAfee vs. Keirn*, 7 *Smedes. & Marsh. Rep.* 780 ;. *Taylor* vs. *Brown*, 5 *Cranch Rep.* 234 ; *Polk's lessee vs. Windell*, 9 *Cranch Rep.* 87 ; *Fenley vs. Williams*, 9 *Cranch* 164 ; *McArthur vs. Bowden*, 4 *Wheat. Rep.* 488 ; *Isaacs vs. Steele*, 3 *Scam. Rep.* 97 ; *Benner vs. Monlove*, 3 *Scam. Rep.*

The case of *Lytle et al. vs. The State and others, Howard Rep.; S. C.*, 7 *Eng. Rep.* 9, is directly in point upon this question.

English, and Trapnall, for appellee.

1. The appellee submits that the pretended certificate of entry, relied on by the plaintiffs, was issued contrary to law, and is a mere nullity, and conferred upon them no right to recover the land from the possession of defendant. The other documents are merely copies of the correspondence between the public officers, serve to show how this certificate came to be issued; but added nothing to its validity.

The *3d section* of the act of Congress, of *April 20th*, 1832, is in these words : " That the Hot Springs in said Territory (of Arkansas,) together with four sections of land, including said Springs, as near the centre thereof as may be, *shall be reserved* for the *future disposal* of the *United States*, and *shall not be entered, located*, or *appropriated for any other purpose whatever.*" *Public Lands—Laws, Inst.*, and *Op.*, vol. 1, *p.* 495.

The public lands belong to the United States. Congress has the exclusive power of providing for the disposal of them, and the act *reserving* the land in question from *entry*,. &c., was binding upon every officer of the Government, from the President down. It *tied* the *hands* of the *Secretary* of the *Interior*, as well as of the Commissioner of the General Land Office, and the Register

and Receiver, and 'the pretended *entry* of the plaintiffs is as illegal and void as if it had been permitted without the instructions of the Secretary.  *Wilcox vs. Jackson*, 13 *Peters R.* 498; *Hunter vs. Hemphill*, 6 *Mo. Rep.* 106; *Sarpy vs. Rapin*, 7 *Mo. Rep.* 503 ; *Stoddard et al. vs. Chambers*, 2 *Howard U. S. Reports* 284.

2. The plaintiffs claim a pre-emption to the premises, under the act of May 29th, 1830.  *Public Lands—Laws, Inst. and Op., part* 1, *p.* 473.  But this act remained in force for but one year. See *sec.* 5, of the act.  The certificate of entry offered in evidence by them, bears date 15*th Dec.*, 1851, some ten years after the act ceased to be operative, and they offered no evidence in connection with the certificate to show that they availed themselves, or attempted to avail themselves, of its provisions whilst it was in force.  Nor did they show, or offer to show, that they came within the provisions of the *act of* 14*th July*, 1832, *same book, page* 511; or of the *act of March* 2, 1833, *same book, page* 529, each of which acts extended the benefits of the *Act of May* 29, 1830, for one year, not generally, but in special cases therein designated.  The certificate was, therefore, for this additional reason, no evidence of title in the plaintiffs, and was properly excluded from the jury.

Mr. Justice WALKER delivered the opinion of the Court.

This was an action of ejectment, brought in the Hot Spring Circuit Court, by the heirs of Ludovicus Belding, deceased, to recover possession of the South - west quarter of section thirty-three, in township two South, of range nineteen west.  The case came on for trial, upon the general issue, and the plaintiffs, to sustain the issue on their part, (the hand writing and signatures of the officers, respectively, being admitted,) offered, in evidence, to the jury, a receipt of the Receiver of the United States Land Office, at Washington, Arkansas, and a transcript, certified by the Register of said Land Office, which are as follows:

"No. 6545.                              *Receiver's Receipt.*

RECEIVER'S OFFICE, AT WASHINGTON, ARK., }
          *December* 19*th,* 1851.   }

Received, of Maria Gaines, (wife of William H. Gaines, formerly Maria Belding), Albert Belding, Henry Belding, and George Belding, the heirs and legal representatives of Ludovicus Belding, deceased, of Hot Spring county, in the State of Arkansas, the sum of two hundred dollars, in full, for the South-west quarter of section thirty-three (33), in township two (2) south, of range nineteen (19) west, containing one hundred and sixty acres (160), according to the return of the Surveyor General, at $1 25 per acre."

According to instructions, I note that this entry interferes with the New Madrid location of Francis Langloise, on the same lands; and, also, that it embraces lands, directed to be reserved, by the act of Congress of 20th April, 1832, and is only permitted to be made, under the decision of the Secretary of the Interior, under date of November 21st, 1851, and the instructions of the Commissioner of the General Land Office, under date of the 25th of November, 1851, in accordance with said decision.

                    B. F. HEMPSTEAD, *Receiver.*

                              *Register's Transcript.*

                    GENERAL LAND OFFICE,     }
                        *November* 25*th,* 1851. }

GENTLEMEN : The papers accompanying your letters of the 18th and 24th March last, in reference to the claim of the Hot Springs, in Arkansas, having been submitted to the Secretary of the Interior, for his action on the legal point in the case, to wit : the reservation of the land by the act of Congress ; they were returned to this office, for its decision, on the respective merits of the pre-emption claims, irrespective of this question.

On the 26th of August last, this office returned the papers, with its decision, adverse to the claim of the heirs of John Percifull,

and in favor of that of the heirs of Ludovicus Belding, deceased, it agreeing with you both as to the establishment of the facts of cultivation, in 1829, and possession on the 29th May, 1830, and regarding the objections of the Receiver, founded upon the opinion, that those acts were performed as the tenant of another, as not affecting the validity of the claim.

On the 14th ult., this office received the opinion and decision of the Secretary of the Interior, dated the 10th of the month, in which he sustains the existing validity of the act of the 20th of April, 1832, it not having been repealed, or affected by any subsequent law; and that, therefore, none of the claims, preferred for the land, are of any legality.

On the 16th ult., an application was made, by the attorney of the heirs of Belding, for permission to make an entry of said claim, in order that they may be placed in a proper position, for the assertion of their rights, hereafter, in the courts, stating that, of course, under the decision of the Secretary, they should not ask for a patent. This was refused by this office, and an appeal, from that action, taken to the Secretary of the Interior, who, on the 21st inst., addressed to this office, a letter, a copy of which is herewith enclosed.

In accordance with the direction of the Secretary, therein contained, you are instructed to permit the heirs of Ludovicus Belding to make payment of the South-west quarter of section thirty-three, T. 2 S., R. 19 W., as containing one hundred and sixty acres; and, in addition to the ordinary. entry thereof, upon your books, and the return to this office, you will note the fact of its interference with the New Madrid location of Langloise; of its embracing land directed to be reserved by act of 20th April, 1832; and that said entry is permitted, under the Secretary's decision of the 21st of November, 1851. Similar annotations will be made on the Receiver's receipt, and Register's certificate.

Respectfully, your ob't. serv't.,

J. BUTTERFIELD, *Commissioner.*

*Register and Receiver*, Washington, Ark.

DEPARTMENT OF THE INTERIOR, }
*Washington, Nov.* 21*st*, 1851. }

SIR: Upon consultation with the Attorney General, and after full consideration of the application of A. H. Lawrence, Esq., attorney for the heirs of Ludovicus Belding, one of the claimants to the Hot Springs, of Arkansas, on appeal from your decision, of the 15th ultimo, against permitting said heirs to make an entry, under the act of the 29th of May, 1830, and 14th of July, 1832, I have concluded, that it will be proper, and in accordance with precedents, to permit them to do so: and you will, therefore, instruct the Register and Receiver accordingly. Said entry will remain subject to the same power of revision and control by the General Land Office, and this department, as may be lawfully exercised over any ordinary entry. The Government will still hold the ultimate power of protecting its own right, while the claimants will be merely placed in a position, to contest the adverse claims of others, to the same land.

I am, sir, very respectfully,
Your obedient servant,

ALEX. H. H. STEWART, *Secretary.*
To the Commissioner of the General Land Office.

LAND OFFICE, WASHINGTON, ARKANSAS, }
*December* 19*th*, 1851. }

No. 6645.

We, Maria Gaines, wife of William H. Gaines, late Maria Belding, Albert Belding, Henry Belding, and George Belding, heirs and legal representatives of Ludovicus Belding, deceased, of Hot Spring county, Arkansas, do hereby apply to purchase the South-west quarter of section thirty-three (33), in township two (2) South, of range nineteen (19) West, containing one hundred and sixty (160) acres, for which we have agreed, with the Register, acting under instructions from the Commissioner of the Gene-

ral Land Office, bearing date the 25th of November, 1851, to give at the rates of one dollar and twenty-five cents per acre.

> A. BELDING,
> MARIA GAINES.
> HENRY BELDING.
> GEORGE BELDING.

I, William H. Etter, Register of the Land Office, at Washington, Arkansas, do hereby certify, that the tract above mentioned, is sold, as containing one hundred and sixty acres, as mentioned above, and the price agreed upon, is one dollar and twenty-five cents per acre.

> WM. H. ETTER, *Register.*

NOTE—In accordance with instructions, I note the interference of this entry, with the New Madrid location of Langloise; of its embracing land, directed to be reserved by act of 20th of April, 1832, and that the entry is permitted to be made, under the decision of the Secretary of the Interior, of the 21st of November, 1851, transmitted to this office, by the Commissioner of the General Land Office, under date of the 25th of November, 1851.

> WM. H. ETTER, *Register.*

> REGISTER'S OFFICE, WASHINGTON, ARK., }
>      *January* 19*th,* 1853.   }

I, William H. Etter, Register of the Land Office, at Washington, Arkansas, do hereby certify, that the foregoing pages contain a true copy of the letters received from the Commissioner of the General Land Office, the application filed, and the annotation on the tract book in this office, under said instructions.

> WILLIAM H. ETTER, *Register.*

To the introduction of which, the defendant objected, and the court sustained the objection, and refused to permit the same, or any part thereof, to be read in evidence.

This was the only evidence of title, offered by the plaintiffs. They offered, however, to make proof of the locality of the land; that defendant was in possession at the commencement of the suit; and that plaintiffs were the children, and only heirs at law, of Ludovicus Belding, deceased, which the court refused to permit them to do. Exceptions were taken; and, after verdict and judgment for the defendant, the plaintiffs appealed.

The whole question at issue, turns upon the admissibility of the certificate of entry, made with the Register and Receiver of the Land Office, at Washington, Arkansas.

Our statute, (*Digest, ch.* 60, *sec.* 2,) provides, that the action of ejectment may be maintained, in all cases, where the plaintiff claims the possession of the premises, by virtue of ; *first*, an entry made with the Register and Receiver of the proper Land Office, of the United States; *Second*, a pre-emption under the laws of the United States; *Third*, when an improvement has been made by him, on any of the public lands of the United States, whether the lands have been surveyed or not, and where any person, other than those to whom the right of action is given by the preceding clauses of this section, is in possession of such improvement.

*Sec.* 11. "To entitle the plaintiff to recover, it shall be sufficient for him to show, that at the time of the commencement of the action, the defendant was in possession of the premises, and that the plaintiff had title thereto, or, had the right to the possession thereof, as is declared by this act to be sufficient to maintain the action of ejectment."

The plaintiffs in this case, claim title to the premises, under the first clause of the second section, which gives a right of action to any one, who has made an entry of the land with the Register and Receiver of the proper Land Office.

To sustain the issue on their part, the plaintiffs offered a duly certified transcript of the certificates of entry, and payment of the purchase money, under the official certificate of the Register.

This evidence was, upon motion of the defendant, excluded from the jury, solely upon the ground, that under the circumstan-

ces of the case, the entry was void. If it was void, then it was evidence of nothing, and was, of course, properly rejected; if not, then under the statute it was admissible, even though erroneously made.

The objection taken by the defendant, rests upon two prominent grounds: *First*, That the entry was made before the Register and Receiver, who had decided against the validity of the claim, upon the arbitrary and unauthorized direction of the Commissioner of the General Land Office, in obedience to instructions from the Secretary of the Interior. *And Second*, That after the expiration of the pre-emption act of the 29th May, 1830, and before its provisions were extended by the act of the 14th of July, 1832, to that class of settlers on the public lands, who were entitled to pre-emptions under the act of 29th of May, 1830, but were prevented from availing themselves of the benefit of the act, because the land had not been surveyed, and the plats returned into the proper office, before the act expired by limitation. That this particular tract of land was, by the act of Congress of the 20th of April, 1832, expressly reserved from entry or sale; and that, therefore, any sale or disposition of it, attempted to be made by the land officers, was void.

The application to enter the land was made within one year next after the plats were returned into the office, and the Register and Receiver, upon due consideration of the evidence adduced before them, decided, that it was sufficient to establish the fact of cultivation in 1829, and actual residence on the land on the 29th of May, 1830; but refused to allow Belding's heirs a pre-emption, because it appeared to them, that Belding occupied and cultivated the land, as a tenant; and we may presume, from the letter of the Commissioner to the Register and Receiver, of 25th November, 1851, that they, at the same time that they rejected the claim of Belding's heirs, decided in favor of that of John Percifull, another pre-emption claimant to the land, and submitted their decision to the Commissioner of the General Land Office, who referred the matter to the Secretary of the Interior, for his

action touching, the reservation of the land, by the act of Congress of the 20th April, 1832. Without deciding that question, the papers were sent back to the Commissioner for his decision upon the respective merits of the pre-emption claims, irrespective of the question of the reservation of the land from sale. The Commissioner decided adversely to the claim of Percifull, and in favor of that of Belding's heirs, concurring in opinion, with the Land Officers, at Washington, Arkansas, as to the sufficiency of the proof of cultivation and residence, and holding that the question of tenancy did not affect their right to a pre-emption. This decision was certified to the Secretary of the Interior, who decided that, notwithstanding the sufficiency of the proof, to entitle Belding's heirs to a pre-emption, none of the claims to this land were valid, because it was exempt from sale, by virtue of the act of Congress of the 20th of April, 1832.

Subsequently, upon the application of the attorney for Belding's heirs, the Secretary of the Interior directed the Commissioner to permit Belding's heirs to enter the land, under their pre-emption, they desiring to do so, in order to place themselves in a position to assert their right to the land, in the courts. This, the Commissioner directed to be done, and that it should be noted upon the books of the office; and, also, upon the certificates of entry, that such entry interfered with the New Madrid location of Francis Langloise, and embraced lands, directed to be reserved from sale, under the act of the 20th April. And the land was accordingly entered, on the 19th of December, 1852, at which time, certificates in the usual form issued, with notes of such interference.

Under this state of case, we have no doubt but that there was a sufficient adjudication of the claim of Belding's heirs, to authorize the instructions given by the Commissioner of the General Land Office, to the officers at Washington, Arkansas. The claim had been favorably adjudicated by the Land Officers in the first instance, so far as cultivation and subsequent actual residence were necessary to entitle them to a pre-emption; and, the only point

of difficulty, with them, was, that Belding was, at the time, a tenant. This was held to be no valid objection to the claim, by the Commissioner, who, at the same time, decided adversely to the claim of Percifull. Suppose, then, that the act of the 20th of April, had not raised other grounds of objection, it is very evident that the Commissioner would, at once, have instructed the Register and Receiver to allow the claim, and that, without further proof, they would have done so, unless the claim of Langloise had prevented, (which, however, seems not to have been considered in connexion with those of the pre-emption claimants). Such orders and directions are not to be considered as being unauthorized. On the contrary, when the act directed to be done, is such as the officer, so directed, may be required, by virtue of his office, under the law, to perform, it is but an ordinary and proper exercise of power, for the officers at the head of the Department to advise and direct its subordinate officers, in respect to the performance of their official duties. The direction may be unwise, but when obeyed, the act done, is not, for that reason, the less obligatory. In this case, it is true, that there is but little apparent necessity for placing one of the claimants in a position to contest at law, with the others, the merits of their respective claims, if all that could result from it would be to determine the merits of the claims; because, that had already been settled, and the only point of difficulty was, as to the effect of the act of 20th April, upon the claims; not upon one, but upon all the claims.

It is, therefore, but fair to presume, that when the Secretary granted the request of Belding's heirs, to permit them to enter the land, so that they might be placed in a situation to contest with other claimants, their right to it, he supposed that in doing so, the proper construction to be given to the act of the 20th of April, would be involved in the controversy, and settled by the courts. And that when this was done, with the aid of the decision of the court upon the law, and a fuller investigation of the merits of the respective claims to the land, the department would proceed to affirm the entry of Belding's heirs, grant the

right of entry to some more meritorious claimant, or adhere to its previously expressed opinion and reject them all.

For this purpose, it was necessary that the entry should be complete and perfect, to communicate title to the heirs of Belding. And this is evident, from the letter of the Secretary, in the concluding part of which he said: "Said entry will remain subject to the same power of revision and control by the General Land Office, and this Department, as may be lawfully exercised over any ordinary entry." Thus expressly putting this upon the same footing of an ordinary entry, announcing, in advance, the right to withhold a patent, which could as well have been done without, as with such announcement. And the note directed to be made of the interfering claims, and also of the law, shows that it was intended only to identify this, as the contested claim, and the ground upon which the contest rested. But in no respect could it change the legal effect of the entry when made. We must, therefore hold that the first ground of objection to the validity of the entry, is not well taken.

The second and main ground of objection to the validity of the entry, is, that the particular tract of land entered, was, by a special act of Congress, reserved from sale or entry; and was, therefore, withdrawn from the jurisdiction or power of disposal, of the Land Officers, as completely as if the land had been beyond the limits of the district, for which they are commissioned to act, or as if, by a sale of the land, it had become private property.

Conceding to Congress the most unqualified power to dispose of the public unappropriated lands, or to reserve them from sale, and admitting it to be true, as contended for by the defendant, that when such is the case, a sale of the land would be void, which would seem to be questionable, unless in a case where the United States was a party, which is, perhaps, the greatest extent to which the decision in *Wilcox vs. Jackson*, 13 *Peters* 498, would go, still, when the claim, which is asserted to the lands, goes behind the act reserving it from sale, it becomes a question of fact to determine, whether the land, at the time of the reservation,

was or not incumbered with these existing rights, which the Land Officers must necessarily consider and determine, in allowing or refusing to recognize the validity of those rights, and being a matter within their legitimate power and jurisdiction, whether determined correctly or not, their decision is not void.

The decision in *Wilcox vs. Jackson*, was made upon a very different state of case from that before us. There, the land in dispute was reserved as a military post, as early as 1824, and was, at the time of the suit, in the actual possession of the United States, by one of its officers. The claim of the plaintiff was under the pre-emption act of 1834, ten years after the land had been reserved, and where there were no facts to be considered, tending to show a previous appropriation of the land.

The case of *Lytle et al. vs. The State et al.*, *9th Howard U. S. Rep.* 314, is decidedly in point, and the opinion is entitled to high consideration, from the fact, that the claim set up, by the complainant, originated under the same law that the plaintiff's in this case did; and, also, under circumstances, in many respects, strikingly similar. In that case, Cloyes' heirs claimed title to a fractional quarter section of land, adjoining the city of Little Rock, by virtue of a pre-emption, under the act of Congress of the 29th May, 1830. They made proof of their pre-emption, before the land officers, at the Lawrence Land District, which was by the Register and Receiver, deemed sufficient; and, thereupon, the claimant offered to pay for that, and some adjoining fractions, amounting in all, to less than 160 acres, but the land officers refused to receive the money. The plats, at that time, had not been returned to the office. By letter of instructions, dated 7th of February, 1831, proof was allowed to be taken of the cultivation and residence of the claimant, in case the plats had not been returned into the office : but no payments were allowed to be made until the plats were so returned, or until further instructed. The plats were not returned into the office until the first of December, 1833.

On the 15th of June, 1832, Congress passed an act, granting to

the Territory of Arkansas, one thousand acres of land, contiguous to, and adjoining the town of Little Rock, to be selected by the Governor. On the 30th of January, 1833, the Governor located this land, as part of the donation, granted the 15th of June, 1832. On the 5th March, 1834, Cloyes," the pre-emptor, having died, his heirs were permitted to enter the land, by virtue of their pre-emption, under the act of 29th May, 1830, and the Receiver was instructed to note the fact that the entry interfered with the location made by the Governor, under the grant of the 15th of June, 1832.

It will be perceived, that, in this case, as in that of Belding's heirs, the act, which donated the land to the Territory, was passed after the act of 29th May had expired, and before the passage of the act of the 14th July, extending the time for making proof and entry of lands, to such claimants as were entitled to the benefits of the act of 29th of May, but had been prevented from making the proof and entry of the same, because the survey had not been made, and the plats returned in time for them to do so, before the act expired by limitation.

This, then, was not merely a reservation of lands from sale, but an actual donation of them to the Territory of Arkansas, and at a time when the act of 29th of May, had expired. Judge Mc-LEAN, who delivered the opinion of the court, in reference to this particular question, said: "Did the location of Gov. Pope, under the act of Congress, affect the claim of Cloyes? Before the grant was made by Congress, of this tract, the right of Cloyes to a pre-emption had not only accrued under the provision of the act 1830, but he had proven his right to the satisfaction of the Register and Receiver of the Land Office. He had, in fact, done everything he could to protect his rights: no fault or negligence can be charged to him."

It is true, that in the case of Cloyes' heirs, proof of the pre-emption was made before the act of 29th May expired, and the money was tendered. They were enabled to make the proof, and identify their claim, because the survey had been made, although the

plats had not been returned into the office, but by express instructions, the officers were forbid to receive the purchase money. So that, in fact, to make the proof, was all that they did, of merit, more than was done by Belding's heirs, and they, or Belding, under whom they claim, could not properly identify the claim, because the surveys were then not made. Each of these claimants may, therefore, be said to have done nothing to forfeit their right to a pre-emption, at the time the act of 29th May expired, and both of them would have been cut-off from all the benefit of the act, but for the passage of the act of the 14th of July, 1832: which the Supreme Court, in the case of *Lytle vs. The State*, says: "Is a supplement to the act of 29th of May, and extended the benefit of that act to Cloyes' heirs." The court, in that case, evidently rests the equitable rights of Cloyes' heirs, upon the ground, that the act of the 29th of May conferred upon them rights, which they had not forfeited by neglect on their part. When commenting upon the nature of this right, the court says : "The claim of pre-emptor is not that shadowy right, which by some it is considered to be. Until sanctioned by law, it has no existence as a substantive right, but when covered by law, it becomes a legal right, subject to be defeated only by the failure to perform the condition annexed to it."

Under this view of the nature of the claim, it became the duty of the Government of the United States, who conferred the right of pre-emption upon a meritorious class of citizens, pioneers in the unsettled Territory of the United States, to afford them an opportunity for making the necessary proof and paying for their lands; and, in compliance with this obligation, the act of the 14th July was passed, to give them an opportunity to avail themselves of the benefits of the act. The court says upon this subject, "that it is a vested right, which Congress is not to be presumed to have intended to impair."

It is, however, unnecessary to discuss, at greater length, the effect of the act of the 14th July, upon that of May 29th, or of the act of 20th of April, upon the rights of Belding's heirs, under these

acts : Because, the question, which we are here to decide, is not whether Belding's heirs were in fact entitled to a pre-emption, but whether under the state of case presented before the Register and Receiver, their action was, or not, extra-judicial and void. And in order to determine this, we have been led to enquire, whether the facts presented a question of doubt, as to existing rights, in the heirs of Belding, at the time the land was reserved from sale. That the facts of the case show it to be such, we are satisfied ; and, consequently, however erroneous their decision may be, under the instructions of the Commissioner of the General Land Office, their acts in obedience to it, are not void, nor can they be questioned, when brought up collaterally for consideration; unless, possibly, it may be done, in a proceeding between the United States and the claimant. *Wilcox vs. Jackson ; Hunter vs. Hemphill*, 6 *Mo. R.* 118 ; *Sarpy vs. Papin*, 7 *Mo.* 506.

The certificates of entry, offered in evidence, were admitted to be genuine, and properly authenticated by the Register. We have held, that they were not void. Whether granted upon sufficient evidence, or what the effect of the act of 20th April is upon the merits of the claim, we are not now to determine. Under our statute the certificates of entry were legal, competent evidence of title in the plaintiffs, for the purpose of maintaining the action of ejectment. Nor was the certificate of entry subject to be impeached by the introduction of evidence, tending to show that no pre-emption should have been allowed to them, or that there were other and better equitable titles to the land. These facts may well be shown in a suit in equity, upon a proper averment of facts, but nothing less than a superior legal title will avail, in a defence at law. This point is discussed in *Bagnell vs. Broderick*, 13 *Peters R.* 450, where an attempt was made to show a superior equity to the legal title held under a patent. The court said : "We are bound to presume, for the purposes of this action, that all previous steps had been taken by John Robinson, jr., to entitle him to the patent; and that he had the superior right to obtain it, notwithstanding the claim set up by Byrne, and having obtained

3B

the patent, Robinson had the best title, known to a court of law. If Byrne's devisees can show him to have been the true owner of the 750 arpens of land, relinquished because injured by earthquakes, and that the patent issued to John Robinson, jr., by mistake, then the equity side of the Circuit Court is the proper forum, and a bill the proper remedy to investigate the equities of the parties."

This opinion sustains the conclusions, at which we have arrived in this case, which are, that although a certificate of entry is conclusive as against all persons who cannot show a better legal title, still it is competent for any one, having a superior equity, to set it up in a suit in equity, in which the validity of the claim, as well as the law, under which it is asserted, will be brought into review, and decided upon. Whether when made, it will be conclusive upon the parties, we are not now called upon to decide, and prefer to confine our decision to the questions of law, legitimately presented upon the record.

The Circuit Court erred in excluding the plaintiffs' evidence from the jury; and, for this error, the judgment must be reversed, and the cause remanded for further proceedings therein, to be had according to law, and not inconsistent with the opinion herein delivered.

Before Mr. Justices SCOTT and WALKER, and Hon. THOMAS JOHNSON, Special Judge.

Mr. Chief Justice ENGLISH not sitting in this case.