Mr. Justice McLEAN
 

 delivered the opinion of the court.
 

 ' The plaintiffs brought an action of ejectment in the Circuit Court, to recover three hundred and fifty arpens of land in the neighbourhood of St. Louis, which they claim under a concession made, by the Spanish government, in 1800, to Mordecai Bell. Bell conveyed his right to James Macxay on the 20th of May, 1804, and on the 20th of September, 1805, Mackay conveyed the same to Amos Stoddard, the ancestor of the plaintiffs. A plat and certificate of the survey Were certified and recorded by Antoine Soulard, as Surveyor-General, the 20th of January, 1806.
 

 On the 29th of June, 1808, the above papers were filed with the recorder of land titles for the district of St. Louis. The claim was -duly presented to the Board of Commissioners, under the acts of Congress, and rejected on the 10th of October, 1811; but afterwards, on the 8th of June, 1835, a new board decided that three hundred and fifty .arpens of land “ ought to be confirmed to the said Mordecai Bell, or his legal representatives, according to the survey on record.” On the 4th of July, 1836, an act of Congress was passed, confirming the decision
 
 of
 
 the' commissioners. The land was surveyed as confirmed. The
 
 *362
 
 defendant, admitted that he' was in possession of forty acres of the land claimed at the commencement of the suit.
 

 The title of the defendant was founded on an entry made by Peltier of one hundred and sixty acres of land, by virtue of a New Madrid certificate, on the 24th of October, 1816./ A survey of the entry was made in March, 1818, and a patent to Peltier was issued on the 16th of July, 1832. Possession has been held of 'the forty acres claimed by the defendant, and by those under whom he claims, since 1819. This title was conveyed to the defendant.
 

 The township in which this land is situated was surveyed by the United States in 1817, 1818, and 1819, and was examined in 1822. In 1823, the proclamation of the President, published. at St. Louis, directed the lands in the above township to be offered at public sale.
 

 This title, with but little variation of facts, was asserted by the plaintiffs, and duly considered by this court, in the case of Stoddard’s Heirs
 
 v.
 
 Chambers, 2 How. 284. And the court held the title to be valid against that which is now set up by the defendant. In the case of Barry
 
 v.
 
 Gamble, 3 How. 53, that decision was sanctioned. But the counsel for the defendant, having brought the same title before us in this case, have requested a reexamination of the points ruled in the case of Chambers. We will briefly refer to the points now made, and to the new facts proved, on which this application is founded.
 

 The court instructed the jury, “ that the land included in the survey given in evidence, made for Amos Stoddard on the 21st of January, 1806, by James Mackay, No. 42, was reserved from location and sale at the time Peltier’s location was made, and also at the time his patent issued; and, therefore, both the location and patent are invalid, as against the title of. Amos Stoddard, or those claiming through him, to the extent that the two claims cover the same land. And that the land included in Mackay’s survey aforesaid is the land confirmed- to Amos Stoddard, or to his heirs, by the act of Congress of July 4th, 1836,” &c.
 

 It is objected, that the concession granted to Mordecai Bell should have been located at St. Andre, and not in the vicinity of St. Louis. In his petit-ion to the Lieutenant-Governor of Upper Louisiana, he states, “ with the consent of your predecessor, he came over to this side [of the Mississippi], where he has selected a piece of land in his Majesty’s domain, on the south side of the Missouri. ' This being considered, he supplicates you to have the goodness to grant him, at the same place, for the support of his family, three hundred and fifty arpens
 
 *363
 
 of land in superficie.” This bears date 2lst January, 1800; and on the 29th of the same month the Lieutenant-Governor responds, — “ In consequence of the information of the commandant of St. Andre, Don Santiago Mackay, I do grant to the petitioner the tract of land of three hundred and fifty arpens in superficie,” &c., “ in the place indicated.”
 

 St. Andre, the place of Bell’s residence, is situated on the south side of the Missouri River, about thirty miles from St. Louis. Pascal L. Cerré, a witness, states that Bell resided in the neighbourhood of St. Andre several years, and was engaged in hunting, drinking, and playing cards, and led a sort of vagabond life; that his petition, except the mark of the signature of Bell, was in the handwriting of Mackay. And Bell, being sworn as a witness, says he never applied for a concession, nor was there, to his knowledge, any grant made to him. That Mackay told him he had a head right which he, Mackay, wished to obtain, and which the witness exchanged with him for a tract of land near St. Andre.
 

 Instead of the word “(Mississippi),” included in brackets in the petition of Bell, it seems thé letters M. R. S. were used, which one of the witnesses considers “ as put for Majeste Rive Sud”; and Milburn, a surveyor, says, that he should have surveyed the concession on .the south bank of the Missouri River, if not otherwise directed. In opposition to this view, the words of the petitioner are relied on, “ that with the consent of your predecessor, he came over to this side of the M. R. S.,” which could only have meant the Mississippi River, that river being the eastern limit of Louisiana, which extended far north of the Missouri. That to cross the Missouri River, the “ leave of his predecessor ” could not have been asked, as it was unnecessary.
 

 Whatever doubts this evidence may have created, as to the location of Bell’s concession, had it been laid before the commissioners who acted upon the claim, it is now too late to affect the title under it. In regard to the statement of Bell, his conveyance of the land in controversy to Mackay shows, at least, the inaccuracy of his memory. But the survey of the concession in 1806, as now claimed, which survey was recorded and expressly confirmed by the commissioners on the 8th of'June, 1835, is a sufficient answer to the above objection. The survey was a private one, and consequently was of no authority except to designate the locality and extent of the claim, until sanctioned by the commissioners. By the act of the 21st of April, 1806, they were authorized to direct such surveys as they may think necessary for the purpose of deciding on claims presented for their decision ; and under this power they had a
 
 *364
 
 right to adopt private surveys of claims, if accurately executed. This was in pursuance of the instructions of the Secretary of the Treasury.
 

 The great question in the case is, whether the land in controversy was subject to be appropriated by a New Madrid warrant on the 20th of October, 1826, when Peltier made his location.
 

 Under various acts of Congress up to the 26th of May, 1829, Spanish or French titles which had been duly filed by the recorder of land titles were reserved from sale. Those acts are referred to in the case of Stoddard
 
 v.
 
 Chambers. At that period, all claims which had not received the sanction of the government were barred. On the 9th of July, 1832, an act was passed “for the final adjustment of land titles in Missouri,” which provided that the recorder of land titles, with two commissioners to be appointed, should examine all the unconfirmed claims to land in Missouri,.which had heretofore been filed in the office of the said recorder, according to law, founded upon any French or Spanish grant, &.C., issued prior to the 10th of March, 1804.” And they were required to class the claims so as to “ state in the first class what claims, in their opinion, should in fact have been confirmed, according to the laws, usages, and customs of the Spanish government, and the practice of the Spanish authorities under them; and secondly, what claims, in their opinion, are destitute -of merit, law, or equity.” And after the report, the lands in the first class shall continue to be reserved from sale as heretofore, until the decision of Congress shall be made against them; but the second class was declared to be subject to sale as other public lands.
 

 This act reserved from sale, necessarily, all claims which had been duly filed, until the final report of the commissioners; and those which were embraced in the first class, until Congress should reject them. In the case of Stoddard
 
 v.
 
 Chambers, the court say, in reference to Peltier’s location, “ It was made on land not liable to be thus appropriated, but which was expressly reserved
 
 ¡
 
 and this was the case when the patent was issued. Had the entry been made, or the patent been issued, after the 26th of May, 1829, when the reservation ceased, and before it was revived by the act of 1832, the title of the defendant could not be contested. But at no other interval of time, from the location of Bell until its confirmation in 1836, was the land claimed by him liable to be appropriated in satisfaction of a New Madrid warrant.”
 

 The defendants’ counsel suppose, that, if the location of the New Madrid claim was void, the patent, though issued within
 
 *365
 
 the time above stated, could have conveyed no title. The New Madrid location was void because it interfered with the Spanish title. When that title was barred by the lapse of time, the government, by issuing of a patent, would have sanctioned the New Madrid claim, and no one could have contested it, — as between the government and the claimant no controversy could exist. By the patent, he only acquired what his certificate entitled him to. And the right, thus made complete, could not have been affected by any subsequent act of Congress. The government might have withheld the patent, on the ground that the New Madrid certificate had been improperly located; but that not being done, the patent gave an indisputable title.
 

 It is insisted that the New Madrid location, if made on lands reserved from sale by reason of the Spanish claim, became valid, so soon as the bar was complete against that claim. But this consequence would
 
 not seem
 
 to follow. If, during the bar, no act was done by the government to confirm the New Madrid claim, nor by the claimant to perfect his title, a removal of the bar would not prejudice any newly acquired right. And this only could prevent the renewal of the reservation by Congress. ' By such a renewal, a preference was given to the Spanish claim, which was an exercise of legislative discretion. Congress might have excepted from this reservation lands covered by New Madrid locations; but this not having been done, the Spanish claim was revived, and placed on the same footing as before the bar.
 

 It is insisted, that, as Bell’s concession was surveyed without authority, it was no notice to Peltier, though recorded. The act of 1806, as before remarked, authorized the commissioners to direct such surveys as they may think necessary to be executed, for the purpose of deciding on claims presented for their decision; but where a private survey had been made, they had the power to adopt it, as was done in this case. And such survey, being placed upon record by the recorder, seems to have been a reasonable notice, within the acts of Congress.'
 

 But it is contended, that the proviso in the act of 1836, which confirmed the Spanish and French claims reported by the commissioners, embraces Peltier’s New Madrid location. The words of the proviso are, “ that if it should be found that any tract confirmed, or any part thereof, had been previously locatéd by any other person or persons, under any law of thé United States, or had been surveyed or sold by the United States, that act should confer no title on such lands, in opposition to the rights acquired by such location or purchase.”
 

 
 *366
 
 In the case of Stoddard
 
 v.
 
 Chambers, this court held, that “ a location under the law of the United States ” must be “ in conformitjr with it.’? But this, it is insisted, is not the true construction of the proviso. That “ undpr the law ” does not mean, “ in pursuance of it,” or
 
 “
 
 in conformity with it,” but an act assumed to be done under it.
 

 The word
 
 under
 
 has a great variety of meanings. But the sense in- which it 'was used in the proviso is, “subject to the law.” We are under the laws of the United States, that is, we are subject to those laws. We live under a certain jurisdiction, that is, we are subject to it. The proviso declares, that the act shall not confer a title,
 
 “
 
 in opposition to the rights acquired under the laws of the United States.” This would seem to be conclusive, as no right can be acquired under a law which is not in pursuance of it. If the New'Madrid location was made in violation of the law, it is not perceived how any right could be acquired under it.
 

 The judgment of the Circuit Court is affirmed.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Missouri, and was argued by counsel. On consideration whereof, it is nowhere ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.