## Case No. 8,842.
### MACKAY v. CENTRAL R. R. OF NEW JERSEY.

[See 4 Fed. 617.]

---

## Case No. 8,843.
### MACKAY v. EASTON.

[2 Dill. 41;[1] 16 Int. Rev. Rec. 173.]

Circuit Court. E. D. Missouri. Sept. Term, 1872.[2]

LAND GRANTS — MISSOURI — NEW MADRID LOCATIONS—EJECTMENT — VALIDITY OF PATENT.

1. A patent issued in 1827, pursuant to a New Madrid certificate or warrant, under which both parties claimed title, and pursuant to the requirements of acts of congress is valid, and possession by the defendant under the patent for ten years was *held* to entitle him to a verdict in an ejectment against him.[2]

2. The case distinguished from Easton v. Salesbury, 23 Mo. 100, same case in error, 23 How. [64 U. S.] 426, where the patent of 1827 was decided to be void.[2]

3. Acts of congress pertaining to the New Madrid locations referred to by Treat, J.

This was an action of ejectment to recover possession of certain land situated in the city of St. Louis, forming part of a tract which was located under New Madrid certificate No. 159, dated November 16, 1816, in favor of James Smith, upon which a patent was issued May 28, 1827, to said Smith or his legal representatives. Smith, on July 9, 1811, had had confirmed to him by the commissioners for the adjustment of titles to land in the territory of Missouri, certain lots of land in New Madrid county, which lots were afterwards, and while still owned by him, materially injured by earthquakes; whereupon, by virtue of the act of congress approved February 17, 1815 [3 Stat. 211], making provisions for the relief of sufferers by the New Madrid earthquakes, the certificate aforesaid was issued in the name of James Smith, and upon this certificate the patent above mentioned was issued to Smith or his legal representatives. Both parties in this action claimed under the James Smith in whose name the certificate of location was issued. Plaintiff [George R. Mackay] claiming under a title bond by Smith to Andrew P. Gillespie, dated April 14, 1816, and under a deed by Smith to Gillespie, executed of date March 5, 1819, pursuant to the covenant to convey contained in such bond. Gillespie, in 1846, conveyed to William W. Gitt, who conveyed to plaintiff. Defendant [Alton R. Easton] claimed under a deed dated October 22, 1816, by James Smith to Rufus Easton, who, on June 28, 1826, conveyed to William Russell,

from whom the title passed through various intermediate holders to defendant. The case was tried before a jury.

D. T. Jewett and John F. Darby, for plaintiff.

Charles Gibson, E. Casselbury, and William B. Thompson, for defendant.

Before MILLER, Circuit Justice, and TREAT, District Judge.

THE COURT, through TREAT, District Judge, instructed the jury that the patent of 1827, above referred to, was valid, and that the only point for their determination was whether the defendant had been in possession, under the patent, for ten years prior to the bringing of the suit, and that if they were satisfied that possession for that period had been proved, they would find for the defendant. The jury accordingly returned a verdict for defendant. [In view of former decisions, the most striking feature of the case was the ruling of the court that the patent of 1827 was valid, that being the point upon which the case eventually turned.][3] It may be observed that the same patent has been decided to be void in the case of Easton v. Salesbury, tried in the St. Louis court of common pleas, in 1855, before his honor, Judge Treat (one of the judges who sat on the trial of the present case), a decision which was first affirmed by the supreme court of Missouri (23 Mo. 100), and afterwards, on writ of error, by the supreme court of the United States. 21 How. [62 U. S.] 426. Conflicting as the decision in Easton v. Salesbury, and that in the present case may appear, such conflict arises, not from a different interpretation of the law, but from the fact that in the former case there was wanting a link which in the present case has been supplied. In order rightly to understand the precise nature of this link, and the ruling of the court, an acquaintance with the acts of congress pertaining to the New Madrid locations is necessary. This was stated by Treat, J., as follows: "By the act of congress above referred to, approved February 17, 1815, any persons owning lands in New Madrid county, and whose lands had been materially injured by earthquakes, were authorized, subject to the limitations and restrictions therein mentioned, to 'locate the like quantity of land on any of the public lands in the territory of Missouri, the sale of which was then authorized by law.' This act made it the duty of the recorder of land titles for that territory, upon proof of the title of any such person to the benefits of the act, to issue a certificate that such person was so entitled. Upon such certificate being issued, location was to be made, on claimant's application, by the deputy surveyor of the territory, who was required to survey the same and return a plat of such

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 19 Wall. (86 U. S.) 619.]

[3] [From 16 Int. Rev. Rec. 173.]

location to the recorder, with a notice designating tract located, etc., which notice and plat were to be recorded in said recorder's office, whose duty it then was to transmit to the commissioner of the general land office a report of the claims allowed and the locations made, delivering to the party a certificate of the circumstances and of his being entitled to a patent. This certificate was required to be filed with the recorder within twelve months from its date, and thereupon the recorder was to issue another certificate, which, being transmitted to said commissioner, entitled the party to a patent. Following this act and curative thereof in respect to the mode of survey, was another act, approved April 26, 1822 [3 Stat. 668], which, inter alia, provided that all warrants issued under the act of 1815, should be located within one year after the passage of the amendatory act. that is, within one year after April 26, 1822, otherwise they should be null and void. Now, in the case of Easton v. Salesbury, where the controversy was between the title under the same New Madrid certificate No. 159, and a Spanish concession, but in which the validity of the patent to James Smith of May 28, 1827, above mentioned, was involved, that patent was successively adjudged by the three courts through which the case passed to be not only voidable, but absolutely void, ab initio, the warrant, according to the proofs in that case, not having been located within one year from April 26, 1822, as required by the act of that date. But in the present case the proofs showed that the warrant was located on February 26, 1823, thus establishing the fact of the location within the year limited by the statute of 1822, and thereby supplying the link that was missing in Easton v. Salesbury. This patent having been thus issued pursuant to the certificate or warrant under which both parties claimed title, and pursuant to the terms and limitations of the acts of congress, was therefore valid, and possession by the defendant, under the patent, for ten years before the suit was brought. having been proved, it only remained for the jury to find for the defendant."

Judgment accordingly.

[A writ of error was sued out from the supreme court. where the judgment of this court was affirmed. 19 Wall. (86 U. S.) 619.]