## Doe, *ex dem.* Pollard's heirs v. Files.

1. All grants of any portion of the lands ceded to the United States by the Treaty of Paris of 1803, subsequently to the Treaty of St. Ildefonso, of 1800, excepting such as were made to actual settlers, previous to the 20th of December of 1803, are null and void.
2. Congress does not possess the constitutional power to grant the shore of the navigable waters within this State; and the fact that the grantee had an inoperative Spanish grant for the same, cannot legalize the act of Congress.
3. A patent for lands, the invalidity of which appears by inspection, will not authorize a recovery, and it is unnecessary to resort to Equity, to vaate it.

THIS was an action of ejectment in the Circuit Court of Mobile, at the suit of the plaintiffs against the defendant, for the recovery of "a messuage or lot of land," situate in the city of Mobile.

The defendant being admitted to defend the action, instead of the tenant in possession, confessed lease, entry and ouster, and relying on the title only, pleaded "not guilty." He also, according to the statute, in such case provided, suggested, that since the 8th January, 1836, he had made improvements on the premises in controversy, of the value of ten thousand dollars; under the belief that his title to the same was valid. Thereupon the cause was submitted to the jury.

On the trial, a bill of exceptions was sealed at the instance of the plaintiffs. To maintain the issue on their part, the plaintiffs read to the jury, the act of Congress of the 26th of May, 1824, "granting certain lots of ground to the corporation of the city of Mobile, and to certain individuals of said city," and the act of the 2d July, 1836, entitled " An act for the relief of Wm. Pollard's heirs," as also a patent, which had issued in pursuance of the latter act, for the premises in question.

They also gave in evidence a grant of the land in dispute by Cayetano Perez, as commandant of Mobile, on the 12th December, 1809; proved the genuineness of Perez' signature, and referred to the state papers relating to the public lands, to show the different periods during which he was in command.

It was further shown, that the lot in controversy, was situa-

ted between Church and North boundary streets ; lies east of Water street, in front of lots known under the Spanish government, as water lots, was itself in 1824, a water lot,—and during the time of the Spanish government, the tide flowed over it.

The defendant, in order to make out his defence, gave in evidence, a Spanish grant, made the 9th of June, 1802, to Panton, Lesley & Co., for the lot directly west of that in dispute, and on the opposite side of Water street. This grant was confirmed to John Forbes & Co., as the successors of the grantees, on the 8th January, 1820.

The land east of Water street, was below ordinary high water mark, in 1813, and Water street, was not laid off until 1820 or '21.

John Forbes & Co., entered upon the land granted them ; fulfilled the conditions of the grant ; made valuable improvements thereon, and held undisputed possession of it on the 26th May, 1824.

Curtis Lewis, made the first improvement on the lot east of Water street, except a canal and improvements along it, which were made by John Forbes & Co. It was however, in evidence, that the servants of Wm. Pollard were seen removing some drift wood, and piling some lumber upon it in 1811.

The defendant connected himself with the title of Curtis Lewis, John Forbes & Co., and the corporation of the city of Mobile, which claimed the lot in dispute, under the act of the 26th May, 1824.

Evidence was adduced to show. that the date of the grant to Pollard, had been altered from 1810, to 1809; and the plaintiffs then proved that Cayetano Perez, was commandant of Mobile, in 1810.

The defendant also proved, that he had made improvements on the lot in question, to the value of seven thousand dollars, since the 8th January 1836.

Other facts are shown by the bill of exceptions, but as it is not necessary to state them, in order to raise the questions of law examined by the court, they need not be here noticed.

The plaintiffs counsel moved the court to instruct the jury,

1st. That the Spanish grant to William Pollard, was ratified and confirmed by the 8th Art. of the treaty of amity, settlement and limits between the United States and his Catholic

Majesty, dated the 22d February, 1819, which charge the court refused to give.

2d. .That the act of Congress of the 26th May, 1836, confirmed the Spanish grant to Pollard; which charge the court refused to give; but charged the jury, if they believed the evidence to be true, the fee-simple to the premises in dispute, vested in Forbes & Co., and the acts of Congress of 1824 and 1836, and the patent issued in pursuance thereof, were utterly void, so far as relates to the subject in controversy, and the lessors of the plaintiffs derived no title from those sources.

3d. If they should find that an alteration had been made in the grant to Pollard, advantage could not be taken of it in an action of ejectment, but by a *scire facias*, in the name of the United States, or by a bill in equity ; which charge the court refused to give ; but charged the jury, that if they should believe that the date had been altered, then they should find for the defendant; unless they were satisfied from the evidence, that the alteration was made while Perez was commandant. But if the grant was altered, the law would not presume that it was issued while Perez was commandant: this fact must be shown by proof.

4th. That the act of the legislature of Alabama of January 8th, 1836, " for the relief of tenants in possession, against dormant titles," is contrary to the 10th section of the 1st article of the constitution of the United States, and is therefore void ; which charge the court refused to give; but instructed the jury that the statute was constitutional.

To the refusals to instruct as prayed, as well as to the in-instructions given to the jury. the plaintiffs excepted ; and a verdict being found for the defendant, and a judgment thereon rendered, they have prosecuted a writ of error to this court.

Test, for plaintiffs in error.

Stewart and Campbell, for the defendant.

COLLIER, C. J.—1. The question, whether the 8th article of the treaty of amity, settlement and limits, concluded between the United States and the King of Spain, on the 22d February 1819, ratifies and confirms all the grants of land, made before the 24th January 1818, by his Catholic Majesty, or by his law

ful authority, in .the territories ceded by His Majesty to the United States, is no longer an open question. The case of Foster and Elam v. Neilson, (2 Peters Rep. 254,) expressly decides, that all grants made by the Spanish authorities, of any portion of the lands ceded to the United States, by the treaty of Paris, of 1803, subsequently .to the treaty of St. Ildefonso, of 1800, excepting such as were made to actual settlers, previous to the 20th of December of 1803, are null and void. That case is confirmed by Garcia v. Lee, 12 Peters Rep. 511, and by the still later decision of (Keene v. Whitaker, *et al.* 14 Peters Rep. 170. See also, Innerarity v. Byrne; 8 Porter's Rep. 176, and the heirs of Pollard v. Kibbe, 9 Porter's Rep. 712. That the .land in this State, south of thirty-one degrees north, is, embrac- .ed by the treaty of 1803, has been repeatedly affirmed by every department of the federal government.

2. If the law as laid down by a·majority of the court, in the lessee of Pollard's heirs v. Kibbe, (14 Peters Rep. 353,) is·to . be regarded as decisive of the law applicable to the plaintiffs title, and as excluding all objection to it, then the answer given by the Circuit Court, to the second charge prayed, is confessedly erroneous. Of the authority of that case, we have nothing to say. We may however, be permitted to remark, with all deference, that we should yield to it more willingly, if it had the sanction of a majority of the Supreme Court. We are aware, that as reported, the judgment seems to have been concurred in by five of the Justices; but we have in our possession a manuscript copy of the opinions of Justices Thompson, McLean, Barbour and.Catron, and the judgment that was rendered, at the foot of which, is the following memorandum: " dissenting Justices—Catron, Barbour and Wayne; Mr Chief.Justice Taney, did not sit in this case," attested as follows : " true copy, test Wm. Thos. Carroll, C. S. C. U. S." That Mr. Justice McKinley, was absent during the entire term, appears from a note of the Reporter. If the attestation of the clerk be correct, then but four of the Justices concurred in reversing the judgment of this court. And to all this it may be added, that Mr Justice McLean did not agree to the judgment of reversal, so far as we are informed by his opinion, upon the ground that the grant to William Pollard, in 1809, was ·a " new grant" within the meaning of the act of the 26th of May, 1824. But he yielded

his assent to the conclusion of Mr. Justice Thompson (as we understand it,) because the second section of that statute, required the improvement to be made on the lot east of Water street, and to entitle the proprietor of the lot immediately west to the improved water lot, the improvement should have been made by himself. These are questions, which it seems to us, were wholly unimportant to be considered, unless Pollard's was a "new grant," since it is an undisputed principle, that the plaintiff must recover upon the strength of his own title, and not upon the weakness of his adversary's.

We have taken this view of the case referred to, with the most profound respect for the Supreme Court of the United States, and have only to say, that we hope an opportunity may soon be afforded for a re-examination of the act of 1824.

Conceding however, to the lessee of Pollard's heirs v. Kibbe, all weight that may be claimed for it, and still the answer of the Circuit Court to the second prayer, is not objectionable on error. The water lots of 1824, were a part of the shore of Mobile bay, over which the tide flowed, and must consequently be regarded as a portion of the navigable waters of this State. Among the propositions submitted by Congress to the convention which formed our constitution, for its acceptance or rejection, it is declared, that " all navigable waters within the said State, shall forever remain public highways, free to the citizens of said State, and of the United States, without any tax, duty, impost or toll therefor imposed by the State." By the ordinance which makes a part of the constitution, the convention accepted the propositions submitted. Now here is a clear dedication to the public use of the navigable waters within the State, and an implied inhibition upon the power of Congress to grant the shore. Other arguments quite as cogent might be urged against the exercise of such a power, but we will content ourselves with a reference to the Mayor, &c. v. Eslava; (9 Porter's Rep. 577,) in which the question is largely considered.

The fact that the ancestor of the plaintiffs had a grant from the Spanish authorities for a part of the shore, can make no difference. The stipulation between the federal government and the State, placed it beyond the power of the former to bestow its bounty by confirming that grant, which we have seen was void,

If the acts of 1824 and 1836, do not operate so as to invest the plaintiffs with a title, it is clear that the patent, which upon *its face*, professes to be issued under the authority of the latter act, is merely *void.* The circumstances under which the patent emanated, are shown by an inspection of the document itself, and the powers of a court of law, are as competent to declare its invalidity, as a court of equity can be, in any form of proceeding. Indeed, it would be an anomaly in judicial proceedings, for a court of law to · sustain an instrument void on its face, upon the ground that chancery should be resorted to, in order to vacate it. The Supreme Court U. S. in Bagnell v. Broderick, (13 Peters Rep. 436,) pushed the law on this point to its utmost limits. But that case is clearly distinguishable from the one before us. In that case, the court held, that in an action at law, a patent from the United States for a part of the public lands, is conclusive, and the party claiming adversely, will be forced into equity, to show that it issued by mistake. There, the patent was in legal form, and apparently issued to the person entitled to the land conveyed, so that it was necessary to establish its irregularity by extrinsic proof: and in that it differed essentially from the patent offered in evidence in the present case. There are also other points of difference, which will be readily perceived by a comparison of the cases. Ross v. Doe, *dem.* Borland, *et al.* 1 Peters Rep. 655.

3 and 4. Even conceding that the third and fourth prayers for instructions were strictly in conformity to law, and the charge given in answer to the third prayer, was directly opposed to it, yet in all this, there is no available error. The giving or refusing the charges, could not benefit or injure the plaintiffs. If our view of the acts of 1824 and 1836, is correct, the plaintiffs could not recover, and the court having so instructed the jury, the plaintiffs cannot complain, that they have been prejudiced by the giving, or withholding any other instructions.

Without attempting to add any thing further, the judgment of the Circuit Court is affirmed.