Lipscomb, J.
The appellees brought their suit against the appellant to recover land, and obtained a verdict and judgment from which an appeal was taken to this court.
There was a motion for a new trial on several grounds stated. The motion does not appear to have been acted on by the court below. The appellant contends, and we think justly, that as the motion was not granted, it was overruled by the operation of law. It is not, however, important, to the interest of the parties, as the most important points will arise on the face of the record. We shall consider, however, the motion for a new trial as overruled; and, if it was a case that required it, would reverse the judgment, if, in our opinion, the court below erred in so doing. We see nothing of error in the overruling the motion for a new trial, from the evidence that was permitted to go the jury; the correctness of the opinion of the court in injecting evidence will be noticed hereafter. One of the grounds only for a new trial will be considered. The affidavits of several of the jurors going to show their own misconduct were presented to the court as grounds in support of the motion. The permitting such evidence cannot be too strongly reprobated as leading to *(510) improper tampering with the jurors to procure such affidavits aftei verdict, and further, a juror so shamelessly disregarding the obligation of his oath as to be guilty of such irregularities, after a cause has been submitted to him, justly deserved punishment, and ought to have received it. Such affidavits when offered should only have been received and made a part of the records of the court, as the grounds of the punishment of the affiants.
"We shall now proceed to examine other questions of law presented by the record.
The first in order will be the striking out of a part of the answer of the defendant in the court below. The suit was brought on a grant for a leagute of land issued by George Antonio Mixon, commissioner for Zavalla’s colony.
• The defendant in the first part of his answer puts in a general denial of the allegations in the petition. lie then further answers by making several distinct averments, which it is not necessary to notice excepting one of them, charging that the survey of the grant was made without the limits of Zavalla’s colony. All of the answer was stricken out excepting the general denial. It is difficult to conceive on what principles the averment received was stricken out, because although the general denial would put the plaintiff to proof of good title, yet it is surely no objection that the defendant should, in his answer by an averment, advise the plaintiff that the validity of the deed would be impeached on the trial; and it is only by referring to the decision of the court on the trial that the reason for striking out the averment was found to be that the defendant could not be permitted, in this action, to impeach the validity of the grant, under which the plaintiff claimed title. If the title could be impeached, we believe it could have been done under the general denial as well as under the special averment, therefore, it was not of much importance to the defendant that his averment was stricken out, yet we believe that it ought not to have been stricken out, unless it be true that the defense set up by the defendant in the averment was not good in law. To which inquiry we will proceed, being the point on which the case mainly depends. On the trial the defendant offered in evidence the colony contract of the empresario, Zavalla, with the government of Ooahuila and Texas. And for the purpose of showing that the land in question was not within the limits of the colony, he then offered the evidence of Adolphus Sterne and George W. Smyth, taken by commissioners, which testimony was rejected by the court as incompetent and inadmissible. The counsel for the plaintiff below (the appellee in this court) has attempted to assimilate *(511) the grant to a record judgment, and denies that it can be collaterally inquired, whether it was correct or not; that its correctness cannot be drawn into the controversy. How we conceive that there may be a material difference between a deed and a judgment of record; yet admitting its effect to be the same, the conclusion would not follow, that it could not be inquired into in any case. The distinction is this; if it is a court of competent jurisdiction and has adjudicated on a matter within its jurisdiction, the judgment so rendered cannot be inquired into in a collateral way; it is res adjuclioata. But if there is a defect of jurisdiction the judgment is a nullity, and may be so shown in any suit where it may be understood, by classifying them as void and voidable judgments. Ho one is concluded by the first; every one is to some extent concluded by the latter.
This doctrine was fully examined in the case of Sutherland v. De Leon, at the last term of the court. It is fully laid down in Rose v. Himley, by the late Chief Justice Marshall. He says: “A sentence professing on its face to be the sentence of a judicial tribunal, if rendered by a self-constituted body, or by a body not empowered by its government to talce cognizance of the subject it had decided, could have no legal effect. The power of the court then is, of necessity, examinable to a certain extent by that tribunal which is compelled to decide whether its sentence has changed the right of property. The power under which it acts nms't be looked into, and its authority to decide questions which it professes to decide must be considered. Upon principle it would seem that the operation of every judgment must depend on the power of the courtto render that judgment; or in other words, on its jurisdiction over the subject-matter, which it has determined. Hickley et al. v. Stewart et al. 3 How. (H. S.) 760; Elliott et al. v. Piersol, 1 Pet. 310.” The appellee’s counsel further contends, that parol testimony could not be received to impeach the grant of the commissioner Hixon, and refers to a case in é Bibb, 329, to show that the grant cannot be resisted by parol evidence; that if it was illegally issued it must be vacated by seirefaeias, or some other proceeding.
I am inclined to believe, that case must be imperfectly reported — that grant must have issued from the general granting power of the domain; if so, and the grantee was entitled to land in a particular district, and the granting power had granted to him other lands, it well might have been answered that as the jurisdiction of the granting power was not limited but general, his grant could not be resisted until it had been vacated. If, however, the authority of the officer to grant had been restricted to certain territorial limits, and he had *(512) transcended his authority and made a grant beyond the limits prescribed to his authority, I should doubt the authority, notwithstanding the great respect in which the name of the judge who pronounced the opinion' is so justly held. There are a great many decisions of the supreme court of the United Stateb that maintain the law to be otherwise. In the revolutionary war, Spain, as an ally of the confederated states, conquered West Florida, north of the thirty-first parallel of latitude belonging to the province of Georgia, and took possession of a considerable portion of the territory now belonging to Alabama and Mississippi, north of the line dividing Florida from Georgia; and issued, while so in possession above the line, many grants for land. Georgia afterwards ceded this territory to the United States and made a stipulation, that such grants held by actual settlers in 1795 should be respected by the government of the United States, ©n many occasions the validity of those grants came before the United States supreme court, and it was uniformly decided by that court that such grants were absolutely void and could have no standing in court, only so far as protected by the stipulation in their favor by the act of cession,— that they were absolutely void for want of jurisdiction in the Spanish government over the soil, as a part of her domain. See Hinckey et al. v. Stewart et al. cited above. So in Wilcox v. Jackson, 13 Pet. 499, where the commissioners of the land office at Chicago had. passed on the application of plaintiff’s lessee for a preemption and allowed it, the supreme court held that the commissioners had transcended their powers and granted land that they had ho right to grant. Row, the decision of the board of land commissioners was prima faeie according to law, and within their proper jurisdiction; but when it was shown that they had sold land, not authorized by law to be sold, they had transcended their jurisdiction and their decision was not merely voidable but absolutely void, although the land was a part of the public domain.
In the case of Stoddard et al. v. Chambers, 2 How. (U. S.) 318, Judge McLean says, “It is true, a patent possesses the highest verity. It cannot be contradicted or explained by parol, but if it has been fraudulently obtained, or issued against law, it is void. ■ It would be a most dangerous principle to hold that a patent should carry the legal title, though obtained fraudulently or against law.” We hear nothing in these cases of proceedings instituted to set aside their grants or patents; they are treated as nullities, and that nullity shown in an action of ejectment. There is no infringement of the rule of evidence, that parol evidence shall not be permitted to contradict or explain a deed when we show by parol that the land conveyed is be *(513) yond the powers and jurisdiction of the officer who grants. “We thereby show that it is not merely voidable, hut absolutely void. We do not attempt to say that it meant something not expressed on its face. Indeed, it is difficult to conceive of a case where the question was one of boundary, how it could be decided without resort to parol evidence. Localities must always be determined by parol evidence, from the necessity of the case. It is true that Nixon is supposed jprima, facie to have acted within the pale of his authority, and if the subject-matter on which he acted was legally within his cognizance, his action would be binding, unless it was fraudulent; if so, it would be void. . Or, if it was shown to be against law, it was void. His authority was not general so that it would embrace land anywhere in Texas —dt was limited to a particular tract of territory, designated by the law of the contract; beyond such limits his acts would be void, because acting on a subject matter .over which the law had given him no control. And how was this, fact, that the land was not within the limits of Zavalla’s grant, to be proven, if not by parol evidence. The very proposition involves an absurdity. We have no doubt that if the grant was for land not within the territorial limits of Zavalla’s colony, that it was competent to prove that fact, and the ascertainment •of that fact would render the grant a nullity, without any fraud whatever, solely because it was against law. The proof of fraud would result in the same; it would render the grant a nullity; and it is idle to say that in such cases the government alone can taire advantage of such nullity. What is a nullity? It is nothing done; if so, it cannot be set up for anything; and the idea that government alone can object is founded in erroneously confounding acts void and voidable. If the latter, and the government interested only, in declaring it void for a forfeiture, then the rule would apply, but if the former, it can never be interposed as,an impediment to any one in the prosecution or defense of any right, however small, and in whatever mode it may be presented.
The judgment is reversed and the cause remanded.