T. B. & E. P. BRYAN ET AL. v. THOMAS SHIRLEY AND GUSTAVE MAYHOFF.

*(Case No. 3625.)*

1. PATENT — VOID AND VOIDABLE.— A patent for land issued to one not a colonist of Peters' colony, and which embraces land within the reservation made by the contract with W. S. Peters, will not be held void at the suit of parties having no equities prior to the issuance of the patent, if it was issued from the proper office, at a time when, on surveys lawfully made or renewed, during a preceding interval, such patent *might* have lawfully issued.

2. DISTINGUISHED.— This case distinguished from Sherwood v. Fleming, 25 Tex. Sup., 408.

3. PATENT — VOID AND VOIDABLE.— If a patent emanates from competent authority, although in the preliminary proceedings on which it is based an illegality may intervene which eventuates in the grant of a patent to a party who otherwise would not have been entitled to receive it, yet being issued by an officer authorized to make the grant, and whose duty it is to pass on the sufficiency of the evidence on which it is issued, the state, or some one having color of title in the land, can alone attack the patent for illegality.

4. PATENT.— The evidence was conflicting as to whether a survey made in 1844, for one not a colonist of Peters' colony, on land within the colony reservation, and near its eastern line, was honestly made and in ignorance of the colony limits, the boundary line of the colony not being then run and established on the ground. Patent issued on the survey, and in a controversy between those holding under the patent, and a subsequent claimant under a location and survey made in 1871, *held*, that a judgment in favor of those claiming under the patent should not be disturbed.

5. FACT CASE.— See statement of case for land certificate, which it was held was not so defective as to affect the validity of a patent issued thereon.

6. CASES DISCUSSED AND REVIEWED.— Stoddard v. Chambers, 2 How., 284; Melton v. Cobb, 21 Tex., 539; Kimmel v. Wheeler, 22 Tex., 77; Woods v. Durrett, 28 Tex., 437; Wright v. Hawkins, id., 470; Sherwood v. Fleming, 25 Tex. Sup., 427; and Todd v. Fisher & Miller, 26 Tex., 241, reviewed and discussed.

ERROR from Dallas. Tried below before the Hon. Zemri Hunt.

Suit brought by E. P. Bryan and others on the 21st day of May, A. D. 1874, in trespass to try title, against defendants in error, to recover possession of a league and labor of land, situated in the county of Dallas, setting out the boundary thereof, and claiming title to and possession of the same on the —— day of ——, A. D. 1871.

E. P. Bryan afterwards died, and the suit was revived in the name of plaintiffs in error, F. B. and E. P. Bryan, as his executors, on the 18th day of December, A. D. 1876.

Subsequently plaintiffs filed amended pleadings, setting up the invalidity of defendants' title, by reason of the fact that, at the date of the location of the certificate under which defendants deraigned title, the land was within the limits of

Peters' colony, and reserved from location, and was so reserved when the patent issued under which defendants in error claimed, both by colonial contract and by the act creating the Mississippi & Pacific Railroad reservation. Plaintiffs further alleged, in their amended pleadings, that the claim of defendants to the land sued for was a cloud upon the title; they prayed for its removal, and for the cancellation of patent, etc.

The answer of defendants below was " not guilty," filed on the 2d day of October, A. D. 1874, and the general denial, filed on the 24th day of January, A. D. 1877.

Judgment in favor of defendants against plaintiffs, dismissing the suit, and for costs.

Plaintiffs below proved that they were the owners of a genuine land certificate, issued by the board of land commissioners for Washington county on the 1st day of February, 1838, to Richard Pillow, and approved and recommended by the traveling board of land commissioners for Washington county.

They read as evidence of title to that certificate, a regular and consecutive chain of transfers from Richard Pillow to them.

They proved that the land certificate was located on land in controversy, and a survey made thereof by the county surveyor of Dallas county on the 2d day of November, 1871, and 27th of October, 1871, and that the survey and field notes were returned to the general land office within the time required by law.

Defendants below read in evidence, in support of their claim to the land sued for, the certificate issued by Peter Renfro to Daniel Tanner on the 17th day of February, 1841; survey and field notes, dated 1st day of June, 1844; transfer of certificate, purporting to have been made by Daniel Tanner to Matthew Cartwright on the 5th day of December, 1845; patent to Cartwright, assignee, issued by the commissioner of the land office, on the 2d day of June, 1854; and a regular and consecutive chain of conveyances from and under said Cartwright

to defendants in error.  They had evidence tending to prove that the beginning corner of what is called by the witnesses the Tanner league, was found by them many years after the surveys purport to have been made; that they also traced the eastern boundary line through the timber and found it marked.

The certificate to Daniel Tanner was in the following form:

"THE REPUBLIC OF TEXAS,  ⎫    District Court,
     *County of Sabine.*     ⎬         Fall Term, 1841.

"I, Peter F. Renfro, clerk of the district court of Sabine county, do hereby certify that Daniel Tanner instituted a suit against the republic of Texas, for the establishment of his claim against the republic of Texas, for one league and one labor of land, as an emigrant previous to the date of the declaration of independence, on the —— day of ——, A. D. 1826, under an act of congress entitled ' an act supplementary to an act to detect fraudulent land certificates, and to provide for issuing patents to legal claimants,' approved February 4, 1841, upon a certificate issued to him by the board of land commissioners of Sabine county, and numbered four hundred and eighty-two, and dated the —— day of ——, A. D. 1838, and which said certificate was not recommended as genuine and legal by the local or traveling commissioners appointed under the act of congress passed the 29th of January, A. D. 1840; and at the present term of the district court the said cause came on to be heard.  There was duly impaneled a jury, who, after hearing the evidence and charge of the court, rendered into open court the following verdict: ' We, the jury, find for plaintiff, and give him one league and one labor of land.  W. H. Voris, foreman.'

" Whereupon the court rendered the following judgment: ' It is ordered by the court that Daniel Tanner have and recover of the republic of Texas one league and one labor of land, and that a certificate issue to him for the same.'

" Given under my hand and seal, this the 17th day of February, A. D. 1841.

                              "P. F. RENFRO, C. D. C."

This was accompanied with a certificate dated at San Augustine, on the 18th of February, 1847, certifying that Peter F. Renfro was district clerk "of the district court" "at the date of the within certificate, and that his official acts are entitled to full faith and credit." It is signed

[SEAL]                "O. M. ROBERTS,

   "*District Judge of Fifth Judicial District of Texas.*"

To the reading in evidence of the certificate of the clerk, the plaintiff objected, because it was not approved as required by act of February 4, 1841; because it did not appear that O. M. Roberts was the presiding judge at the time the clerk gave the certificate, and because the papers offered were not a transcript of the proceedings had to establish the certificate. The objections were overruled, and exceptions saved.

There was much and conflicting testimony in regard to the actual location of the land, as to whether it had been actually surveyed under the Tanner certificate, and upon other questions not material to a proper understanding of the opinion.

*Welborn & Leake, Field & Stephens* and *W. H. Barksdale* for plaintiffs in error.

I. The court erred in allowing the defendants to read in evidence what purports to be a copy of the transfer of a land certificate from Daniel Tanner to Matthew Cartwright, because said transfer was not proven to be the act and deed of Daniel Tanner.

II. The act of 1841, and the joint resolution of 1843, passed by the congress of the republic of Texas, together with the several contracts made in pursuance thereof between W. S. Peters & Co. on one part, and the president of the republic on the other, creating what is known as Peters' colony, severed the land embraced within its territorial limits from the mass of the public domain of the state, and set apart and removed it for the purposes of colonization. Pasch. Dig. of Laws, arts. 810, 811, 822, 850; Melton *v.* Cobb, 21 Tex., 539; Patrick *v.*

Nance, 26 Tex., 298; Woods v. Durrett, 28 Tex., 439; Stewart v. Crosby, 15 Tex., 548.

III. Locations made on land within said colony limits, and patent issued thereon, pending the reservation, are absolutely void unless subsequently validated by the government. Fowler v. Allred, 24 Tex., 184; Stoddard et al. v. Chambers, 2 How., 284; Todd v. Fisher & Miller, 26 Tex., 239.

IV. The land in controversy was within the territorial limits of the Mississippi & Pacific Railroad reservations, and the patent under which appellees assert title thereto was issued during the pendency of said reservation, for which reasons it is also null and void. Pasch. Dig. of Laws, art. 5038, and repealed secs. 14, 19; Sherwood v. Fleming, 25 Tex. Sup., 408; Kimmell v. Wheeler, 22 Tex., 84; Wright v. Hawkins, 28 Tex., 470; The State v. Delesdenier, 7 Tex., 76; Mason v. Russell's Heirs, 1 Tex., 721; Patterson v. Winn, 11 Wheat., 380; Mills v. Stoddard et al., 8 How., 345.

V. There is no law of the republic or state of Texas validating locations and surveys made in Peters' colony and patents issued thereon, during the pendency of the reservation, nor is there any law validating the patent under which appellees deraign title, in so far as it is affected by the Mississippi & Pacific Railroad reservation; and only locations and surveys made in Peters' colony prior to the 1st day of November, 1841, and rights acquired by location and survey in the district of country reserved and set apart for the use of said railroad, prior to the 21st day of November, 1853, are respected.

VI. Although it may appear that the land is within a few miles of the boundary line of Peters' colony, and that said boundary had not been established by a survey until June, 1845, still the location and patent under which appellees claim are void, if it can be ascertained and is found from the facts in evidence that the grantee, at the date of his location, or the commissioner of the land office, at the date of issuing patent might reasonably conclude that the land was within said colony.

· *R. A. Reeves* for defendants in error.

I. The official sanction of the clerk's certificate by the judge was all that the statute required, without regard to the form in which it was done, to authorize the Tanner certificate to be read in evidence.

II. The reservation in favor of W. S. Peters and associates, referred to in the plaintiffs' first proposition, was made under a contract and not under a law, and therefore no one but a colonist had a right to claim against a location made by another than a colonist.

III. The law under which the contract was made did not fix the territorial limits of the colony; it only authorized the president of the republic to designate certain boundaries to be above the limits of the then settlements, without further designation. And the location under which the defendants claim being made in good faith before the boundaries of the colony were defined and known, although within the reservation, the title is valid. Melton *v.* Cobb, 21 Tex., 542; Lake *v.* Wafer's Adm'r, 16 Tex., 570; Hamilton *v.* Menifee, 11 Tex., 718; Ledyard *v.* Brown, 27 Tex., 393; Elliot *v.* Mitchell, 28 Tex., 105; Elliot *v.* Mitchell, 47 Tex., 445.

*Ferris & Rainey* also for defendants in error.

I. The verdict of the jury and judgment of the court granted the land; and should it be considered that the law required the presiding judge to indorse his approval on the certificate issued by the clerk, such requirement was directory only, and such indorsement would be in effect only an attestation of the genuineness of the official act and seal of the clerk. Pasch. Dig., art. 4226.

II. The issuance of a patent is an adjudication upon all questions of irregularity or informality in the certificate, and such patent is conclusive against all parties except one having a prior equitable title. Todd *v.* Fisher & Miller, 26 Tex., 241, 242.

III. The contracts made with W. S. Peters & Co. under the

act of 1841, and the joint resolution of 1843, did not withdraw the land from general location, but gave only a preference right of location by the company and colonist, which might have been lost by non-compliance with the contract, or by abandonment at any time before the issuance of patent. Pasch. Dig., p. 234.

IV. We admit that the land in suit was within the limits of the Mississippi & Pacific Railroad reservation, but we deny that the patent is void; for that the defendants' survey was made in 1844, long before the date of the act creating said reservation, and said act expressly excepted from its operation all previous surveys. Pasch. Dig., art. 5038, § 19.

V. Where an equitable right to the land prior to the patent has not been shown, the patent should be sustained, unless it appears clearly and beyond a doubt that the same was issued against the law, or without authority of law, and therefore void. To this extent only, on the subject of void patents, have the authorities gone. Sherwood v. Fleming, 25 Tex. Sup., 427; Wright v. Hawkins, 28 Tex., 470; Todd v. Fisher & Miller, 26 Tex., 241; Brush v. Ware et al., 15 Pet., 106; 11 Wheat., 380; Peters' Condensed S. C. Reports, 359.

VI. An old survey under a headright certificate, and within the limits of a colony, is void only at the suit of colony contractors, or a colonist, having a prior equity by virtue of the colony contract. Melton v. Cobb, 21 Tex., 539; Patrick v. Nance, 26 Tex., 300. There is no case in our reports authoritatively deciding that a survey made within colony limits is void, except where such survey was in violation of positive law.

VII. An incipient right to land, as a location and a survey, or other merely equitable title, not perfected into a grant or vested by deed, may be abandoned. Dikes v. Miller, 24 Tex., 424; 4 Kent, 448; 17 Mass., 297; 23 Pick., 216; 5 Serg. & R., 215; 2 Hilliard on Real Property, 3, 12, 13, 79, 98. The rights of the contractors of Peters' colony and the colonists were incipient and not perfected into a patent, and they

.abandoned all claim to the land in controversy.   See Spencer
. *v.* Lapsley, 20 How., 270.

VIII. After a patent to land issued by the government
has passed out of the hands of the grantee, and the title.has
been conveyed to an innocent purchaser for value, such patent
cannot be attacked for fraud.    Howard *v.* Colquhoun, 28 Tex.,
145; Johnston *v.* Smith, 21 Tex., 724; Field *v.* Seabury, 19
How., .332.   From considerations of public ·policy, and for
the security of .titles, there should be a limit to the admission
of evidence of fraud.   Johnston *v.* Smith, 21 Tex., 730.

*John J. Good,* also for defendants in error, filed a written
argument carefully discussing the questions involved.   .

GOULD, ASSOCIATE JUSTICE.— The title under which plaint-
iffs in error claimed the land in controversy originated in a
survey made in November, 1871, as on vacant public land.

The defendants claim under a patent to Matthew Cartwright,
assignee of Daniel Tanner, of date June 2, 1854, and show con-
veyance ·from Cartwright to Skaggs in 1863; mortgage by
Skaggs to Andrews in 1866; and foreclosure, sale and purchase
thereunder by defendants in 1874.          ·

The survey on which the patent to Cartwright issued pur-
ports to have been made June 1, 1844, by virtue of a certificate
to Daniel Tanner, issued by the clerk of .the district court of
Sabine county February 17, 1841, showing that Tanner's head-
right certificate having been rejected by the traveling board,
he brought suit and recovered judgment establishing his right
to a league and labor of land, the judgment directing the issu-
ance of a certificate therefor.   On February 18, 1847, O. M.
Roberts, judge of the fifth judicial district, certifies that "at
the date of the within certificate" the party issuing was clerk of
the district court, and that his official acts were entitled to
full faith and credit.   The transcript from the general land
·office of the field notes, shows a certificate made by the district
surveyor of Nacogdoches county, December 20, 1849; that the

survey of "first day of June, A. D. 1844, was filed in this office previous to notice of the existence and territorial limits of a contract entered into between the president of the republic of Texas and Charles Fenton Mercer, for the colonizing of certain lands therein designated."

The plaintiffs in error assert that the survey and patent under which defendants claim were each and both null and void, because at the date of the survey and the date of the patent the land was within the limits of Peters' colony, and reserved from location; and further, that at the date of the patent it was also within the limits of the Mississippi & Pacific Railroad reservation. It seems, though this appears to be a subordinate question, that the validity of the grant to Cartwright is also denied, on the ground that there was no valid certificate to support it.

Under authority of an act of date February 4, 1841, and of subsequent legislation, embracing an act of date January 16, 1843, the president of the republic made four different contracts with Peters and his associates: the first of date August 30, 1841; the second, November 9, 1841; the third, July 26, 1842; and the fourth, January 20, 1843; by virtue of which contracts the vacant lands embraced within territorial limits set out in the contracts were reserved from location. Each successive contract added to the territorial limits of the preceding, the effect of the third being to remove the eastern boundary twelve miles east of that fixed in the first and second contracts. The land in controversy lies within the limits of this extension. The colony contracts and the reservation expired on July 1, 1848, and from that date up to February 10, 1852, vacant land within the colony was subject to location like other public land. See Stewart v. Crosby, 15 Tex., 546, where this court affirmed the right of parties to have patents on surveys made within the colony during this interval. See, also, Col. Soc. v. Reed, 25 Tex. Sup., 351.

On February 10, 1852, an act was passed by which "lands lying within the limits and boundaries of said colony, and which

by said contracts were reserved and set apart to the parties of the second part thereof,  *  *  *  shall continue to be set apart for the purposes herein named, for the term or space of two years and six months from and after the passage of this act, and shall remain and be held by the state of Texas for the purposes herein provided, until the expiration of said term." This section proceeds to prohibit the commissioner of the general land office from issuing patents on lands located in said colony other than for the colonists or the company, and other than "old surveys excepted by said colony contracts, located and surveyed before the date of said contracts, unless by the authority of the decree of some court of competent jurisdiction; and the rights or remedies in law or equity of those who may have made locations or surveys of land within the limits of said colony contract, shall not be impaired or changed by the passage of this act." This reservation expired August 10, 1854. Kimmell *v.* Wheeler, 22 Tex., 84. In the meantime, however, what is known as the Mississippi & Pacific Railroad reserve had been created by an act passed December 21, 1853, this railroad reservation embracing that part of Peters' colony including the land in controversy; it being provided in the act that it was not to "affect any right of location, or entry, pre-emption right or survey, heretofore acquired in the district of country reserved and set apart for the use of said road." Pasch. Dig., art. 5038. This railroad reservation remained in force until January 1, 1857, when by statute public lands within its limits were again made subject to location and sale.

In 1844, what is known as Mercer's colony contract was entered into, its limits apparently embracing the land crossed by the twelve mile eastward extension of Peters' colony made by the third contract, and embracing the land in controversy. It appears from the evidence that patent on the Daniel Tanner survey was delayed because it was successively found to be within Mercer's and Peters' colony.

The case was tried below without a jury, resulting in judg-

ment in favor of defendants.   The main issues of law between the parties will appear from the following extracts from briefs of counsel.   Plaintiffs in error say:

"First proposition under seventeenth assignment of error:

"The act of 1841, and the joint resolution of 1843, passed by the congress of the republic of Texas, together with the several contracts made in pursuance thereof, between W. S. Peters & Co. on one part, and the president of the republic on the other, creating what is known as Peters' colony, severed the land embraced within its territorial limits from the mass of the public domain of the state, and set apart and reserved it for the purposes of colonization.   Pasch. Dig. of Laws, arts. 810, 811, 822, 850; Melton *v.* Cobb, 21 Tex., 539; Patrick *v.* Nance, 26 Tex., 298; Woods *v.* Durrett, 28 Tex., 439; Stewart *v.* Crosby, 15 Tex., 548.

"Second proposition under seventeenth assignment of error:

"Locations made on land within said colony limits and patent issued thereon, pending the reservation, are absolutely void, unless subsequently validated by the government.   See cases to first proposition under this assignment of error, and Fowler *v.* Allred, 24 Tex., 184; Stoddard *et al. v.* Chambers, 2 How., 284; Todd *v.* Fisher & Miller, 26 Tex., 239.

"Third proposition under seventeenth assignment of error:

"The land in controversy was within the territorial limits of the Mississippi &· Pacific Railroad reservations, and the patent under which defendants in error assert title thereto was issued during the pendency of said reservation, for which reasons it is also null and void.    Pasch. Dig. of Laws, art. 5038, and repealed sections 14 and 19; Sherwood *v.* Fleming, 25 Tex. Sup., 408; Kimmell *v.* Wheeler, 22 Tex., 84; Wright *v.* Hawkins, 28 Tex., 470; The State *v.* Delesdenier, 7 Tex., 76; Mason *v.* Russell's Heirs, 1 Tex., 721; Patterson *v.* Winn, 11 Wheat., 380; Mills *v.* Stoddard *et al.*, 8 How., 345; 46 Tex., 70."

The defendants in error on their part submit the following propositions:

"First.  That the reservation in favor of W. S. Peters and as-

sociates, referred to in the plaintiffs' first proposition, was made under a contract and not under a law, and therefore no one but a colonist had a right to claim against a location made by another than a colonist.

"An old survey under a headright certificate, and within the limits of a colony, is void only at the suit of colony contractors, or a colonist, having a prior equity by virtue of the colony contract. Melton v. Cobb, 21 Tex., 539; Patrick v. Nance, 26 Tex., 300. There is no case in our reports authoritatively deciding that a survey made within colony limits is void, except where such survey was in violation of positive law.

"Where an equitable right to the land prior to the patent has not been shown, the patent should be sustained, unless it appears clearly and beyond a doubt that the same was issued against the law, or without authority of law, and therefore void. To this extent only, on the subject of void patents, have the authorities gone. Sherwood v. Fleming, 25 Tex. Sup., 427; Wright v. Hawkins, 28 Tex., 470; Todd v. Fisher & Miller, 26 Tex., 241; Brush v. Ware et al., 15 Pet., 106; 11 Wheat., 380; Peters' Condensed S. C. Reports, 359.

"Defendants are innocent vendees of the Tanner grant for a valuable consideration acquired long after the issuance of the patent, and in ignorance of any defects in the title. Johnston v. Smith, 21 Tex., 728; Howard v. Colquhoun, 28 Tex., 135; Blythe v. Houston, 46 Tex., 76, 77. Public policy, the quiet repose of ancient titles, and justice and equity alike demand that defendants shall be protected."

Defendants in error also assert that:

"These surveys, made upon old headright certificates, within the boundaries of a colony, prior to the state constitution of 1845, have been fully recognized by the state of Texas, not as void, but as voidable only.

"1. In the ordinance of 1845, declaring the colonization contracts unconstitutional, and authorizing 'adverse claimants' to plead the rights of the state. Pasch. Dig., vol. 1, pp. 75, 76.

" 2. In the last proviso to ' an act requiring the commmis-
sioner of the general land office to issue patents in certain
cases,' dated June 25, 1845.   Pasch. Dig., vol. 1, art. 889.

" 3. By the provisions of the act relating to lands in Peters'
colony, dated February 10, 1852, excepting from its operation
all prior surveys made within the colony.   Pasch. Dig., vol. 1,
arts. 850, 860."

We have examined with care the authorities cited by plaint-
iffs in error, and have found no case where the reservation was
made, not by express enactment, but under a contract, in
which a patent, issued from the proper office at a time when,
on surveys lawfully made or renewed during a preceding in-
terval, such patent *might* have lawfully issued, has been held
void at the suit of parties having no equities anterior to the
patent.   It is not to be denied that judges of high authority
have spoken of the nullity of surveys and grants on land re-
served from entry, in terms broad enough to include the patent
in the case before us, but we have been cited to no instance in
which the doctrine of their absolute nullity has been enforced
in such a case as the present, and against parties who were
purchasers twice removed from the grantee.

A case much relied on as authority for the reversal of the
judgment on the ground that the patent was absolutely void, is
Stoddard *v.* Chambers, 2 How., 284, which was again before the
same court under the title of Mills *v.* Stoddard, 8 How., 345.

It is true that an entry and survey made during the reser-
vation, on land reserved *by law* for the purpose of giving a
preference to such land claims, originating under the Spanish
or French governments, as might be recommended by the
commission, were held void, and the patent issued on said
entry and survey during the reservation, but after an interval
during which the reservation had ceased, and the land might
legally have been surveyed and patented, was also held void;
but these rulings were made in favor of the claimant under
the Spanish concession, a party having the oldest equity and
for whose benefit the reservation was designed.

The holder of the oldest equity, the party whose rights under the legislative reservation had been infringed on by the illegal entry and survey, was protected, and as to him the illegal survey and patent based thereon were held void. Justice McLean expressly says: "The New Madrid location was void because it interfered with the Spanish title." 8 How., 365.

Again he says: "The inquiry here is whether the defendant has any title as against the plaintiffs." 2 How., 317. And again he says: "No title can be valid which has been acquired against law, and such is the character of defendant's title so far as it trenches on the plaintiff's." Page 318. The patent was held void so far "as it conflicts with plaintiff's title." The sense in which the patent was held void further appears when he says: "A patent is utterly void and inoperative which is issued for land that had been previously patented to another individual." Again he says: "If it has been fraudulently obtained, or issued against law, it is void." 2 How., 318.

The purport of the case is, that the New Madrid claimant had acquired no such right by his illegal survey and the patent held thereon as "could prevent the renewal of the reservation by congress. By such renewal a preference was given to the Spanish claim, which was an exercise of legislative discretion." The New Madrid certificate having been improperly located and improperly patented, and not located and patented under a "law of the United States," the court gave effect to the act of congress confirming the Spanish title as the older and better equity, and held the patent void so far "as it conflicted with plaintiff's title." Page 318.

By the confirmatory act, the older equity became the legal title. See Lewis *v.* Mixon, 11 Tex., 571; Field *v.* Seabury, 19 How., 332. The case falls far short of being a precedent for holding the patent to Cartwright void, as to parties having no equity prior to its issuance.

The case of Wilcox *v.* Jackson was one where a pre-emption claim and register's certificate on land reserved was held

void; but in that case the reservation was for the benefit of the United States, as a military post, and the suit was substantially between the claimant and the United States, the defendant being the post commander. 13 Pet., 499. Says Judge Napton, delivering the opinion of the supreme court of Missouri, in commenting on that case: "But it must be recollected that that was a controversy in which the United States was substantially a party; Wilcox, the defendant, having claimed possession as an officer in the army in possession of a military post, under the express order of the secretary of war. Admitting the correctness of the decision in that case, we might well pause before we adopt in extent the language of the learned judge who delivered the opinion without reference to the question really at issue before the court.

"It is unnecessary to enter into an investigation of the distinction between void and voidable acts. It is sufficient to say that acts which are even held void in common legal parlance as to some persons, are not necessarily void as to others; and when Mr. Justice Barbour declared certain entries made with the land officers, of land expressly reserved from sale, to be absolutely void and null, it certainly was only necessary he should have declared them so as against the United States and those claiming under them. * * * Whatever irregularities might be committed by the agents of this general landed proprietor, the United States, their acts are to be held *prima facie* good, and no third person can be allowed to impeach them unless the principal should think proper to disclaim them. Whatever is therefore merely voidable, where the officer had a general power to sell, and where there was no express reservation of the land sold, the sale is good as to all the world except the United States or those claiming under them." Hunter v. Hemphill, 6 Mo., 106; see also Sarpy v. Papin, 7 Mo., 503; Barry v. Gamble, 8 Mo., 88; and Wright v. Rutgers, 14 Mo., 585. In the last case the court follows the law as laid down in Stoddard v. Chambers, the cases being apparently similar.

But appellants also cite cases from this court, and we proceed to examine them.

In Melton v. Cobb, 21 Tex., 539, a party claiming under a survey made in violation of the Mercer's colony reservation sought to eject a colonist, who, in the exercise of his privileges under the reservation, settled on the same land. The issue was the validity of the reservation. That being upheld, the colonist was of course protected against the wrongful survey, a survey which the court says " was without authority and conferred no title."

In Kimmell v. Wheeler, 22 Tex., 77, the holder of a Peters' colony certificate in May, 1856, after the expiration of the colony reservation, located on land within the Mississippi & Pacific Railroad reservation, and sought to compel a survey on his location. The main question was the validity of the Mississippi & Pacific Railroad reservation. The reservation was supported, and the plaintiff's claim, based entirely on a location in disregard of the reservation, was held invalid. In this case the court says the location is void. It had not ripened into a patent and was manifestly invalid, which was enough for the case.

The distinction between a case where the invalid location or survey is relied on as title, and one where an illegal survey has been patented and the patent becomes the evidence of title, will become evident by looking at the case of Patrick v. Nance, in connection with that of Kimmell v. Wheeler, 26 Tex., 298. A survey made December, 1846, in disregard of Peters' colony reservation, having been patented in April, 1856, the holder under that title recovered against a colonist whose superior rights had been lost by acquiescence " in the rejection of his field notes by a surveyor until the state had parted with its title by issuing a patent to plaintiff." The original invalid survey would have been ineffectual as title, but not so after patent.

Moreland v. Atchison, 19 Tex., 303, is simply to the effect that a pre-emption settlement in disregard of the Peters' col-

ony reservation conferred no right.   There was no patent —
nothing but an invalid pre-emption claim.

Fowler v. Allred was a case of a similar 320 acres pre-
emption claim — originally invalid,— but, before any opposing
rights, recognized and validated by statute to the extent of 160
acres.   The patent improperly issued on this pre-emption
after a valid location, was held effected only to the extent of
160 acres.   Each party held the 160 acres to which he had the
prior right.

In Woods v. Durrett, a survey within and during the Pacific
Railroad reserve was held to present no cause of action, and
is said to be void; but a patent having subsequently issued
was upheld as evidence of title, "no older or superior equitable
right to the land being shown."   28 Tex., 437.

Wright v. Hawkins was a contest between an invalid survey
of a colony certificate, made in disregard of the railroad reserva-
tion, in August, 1855, and a notice filed and location made
November 20, 1857.   The latter was held to be the better title,
and to remain so, unaffected by a subsequent special act of the
legislature, under which the former was improperly patented.
It was held that the patent appeared to have issued by the
direct command of the legislature, and that thus the presump-
tion which it would seem might otherwise have been indulged,
that the commissioner would not have issued it unless there
had been a subsequent valid survey to authorize its issuance,
was rebutted.

Sherwood v. Fleming, 25 Tex. Sup., 408, was a case in
which a survey and patent, both during the railroad reserva-
tion, were held void as against a party who, on November 1,
1859, one year and nine months after the reservation had been
raised, located on the same land.   The survey and patent both
being void, the prior right was held to be in the subsequent
locator, and that right was unaffected by a subsequent act of
the legislature conferring certain patents.

This case presents the strongest application of the doctrine

of the nullity of locations and patents within reservations of any which have been cited.

It is distinguishable from the present in the following important elements:

1. The land in that case was by statute expressly "held in reserve by the state." In the present, the reservation arises out of the contract.

2. In that case it affirmatively appeared that both survey and patent were without authority, and in violation of law. There was no period or interval of time when either survey or patent might have been valid. Here there was an interval of over three years, during which a valid survey or re-survey might have been made, and a valid patent might have issued. There was reason to indulge presumptions in support of the validity of the patent.

3. It differs further in the absence of those considerations of equity and policy, which exist in the present case, growing out of the long interval after the patent during which it might have legally issued, during which the land passed into the hands of third parties, and during which, as well as prior to which, are to be found various legislative provisions scarcely consistent with the idea of the absolute nullity of the patent. Pasch. Dig., pp. 75–6 (ordinance of 1845), arts. 850, 860, 889, 890, 5038; sec. (19), 5045, 5051.

In the case of Todd *v.* Fisher & Miller, 26 Tex., 241, this court says: It cannot be questioned that where it appears, from an inspection of the patent, or the statute under which it issued, that it was unauthorized by law, or that the officer from whom it emanated did not have authority to grant it, it cannot be regarded in any case as evidence of title, citing Doe *ex dem.* Pollard's Heirs *v.* Files, 3 Ala., 47; Polk's Lessee *v.* Wendell, 9 Cranch, 86; Patterson *v.* Winn, 11 Wheat., 380. To these may be added the references of Justice Wheeler in Sherwood *v.* Fleming, and which, beyond cases already considered in this opinion, are Mason *v.* Russell, 1. Tex., 721; The State *v.* Deles-

denier, 7 Tex., 76; Marsh *v.* Brooks, 8 How., 223; and Minter *v.* Crommelin, 18 How., 87.

"But," proceeds the court in Todd *v.* Fisher & Miller, "if it emanated from competent authority, although in the preliminary proceeding upon which it is based — such, for instance, as the issuing of the certificate, or making the survey,— an illegality should intervene which eventuates in the grant of a patent to a party who otherwise would not have been entitled to receive it, yet, as it is made by an officer authorized to make the grant, and whose duty it is to pass upon the sufficiency of the evidence on which it is issued, it appears to be held by the great weight of authority that the state, or some one having a color of title or equitable interest in the land, can alone attack the patent for such illegality." Citing numerous authorities. The opinion proceeds: "If this is not so, all distinction between acts void and voidable is destroyed. But perhaps it may be said that the commissioner of the general land office has no authority to issue a patent unless the preliminary requisitions of the law have been complied with; and, if he were to do so, it consequently should be held, when this is shown, not to pass the title. Such a conclusion would subvert in a great degree the efficacy of the patent, and would leave the party in a worse condition than while his proceeding was *in limine,* for then, if it were held erroneous, he might correct or amend it. The question suggested, however, does not present the correct view of the matter. The commissioner has the *authority* or *power* as the granting officer, but *should not* issue the patent unless the party is shown to be entitled to it; neither should a court give an erroneous judgment. But could the commissioner, it may be asked, issue a patent to any one whom he might fancy without a certificate and survey? Perhaps not; he probably would have no more authority to issue a patent without a certificate and survey of apparent validity upon inspection, than a court has to render a judgment without a petition. But if a certificate and survey are presented to him, and he has acted upon them, it would seem that

his decision, though erroneous, should be conclusive upon all parties except the state, or those who have some color of title to, or interest in, the land."

These views command our hearty assent. They do not favor the extension of the doctrine which would hold a patent void as to parties who had no rights in the land at the time of its issuance, unless, after giving the holder the full benefit of the presumptions which arise "that every prerequisite has been performed," it clearly appears that it was issued without authority or in violation of law. In our opinion no case has been cited, nor have we found any, which goes to the extent that we would have to go to hold the patent issued to Cartwright an absolute nullity because of the reservations.

At the date of appellants' survey we hold that they were not authorized to disregard the patent, and treat the land as vacant.

There are other grounds than those we have been considering upon which the judgment below may have been rendered, and upon which we are inclined to the opinion it should be affirmed. Without undertaking to do more, it is proposed to bring this opinion to a close by stating our conclusions, so far as it is deemed material to do so. The Tanner survey, though within the limits of Peters' colony, was made before the eastern boundary was designated on the ground; and in support of the judgment of the court, it may be assumed that the court found that it was honestly made in ignorance of the colony limits, and being near those limits should be supported. The evidence as to knowledge of the boundaries is conflicting, and the finding of the court on that point should not be disturbed.

The Daniel Tanner certificate was not so defective as to affect the validity of a patent issued thereon. Deen *v.* Wills, 21 Tex., 642; Kimbro *v.* Hamilton, 28 Tex., 560; Babb *v.* Carroll, 21 Tex., 765.

It does not appear that the court erred in holding the land in controversy to be the same as that described in the Daniel Tanner field notes, or in holding the Tanner league to be identified.

We see no error in the various rulings of the court admitting evidence complained of by appellants. But as the case was tried without a jury, and there was sufficient legal evidence to support the judgment, the admission of incompetent testimony would be no ground for reversal. Melton *v.* Cobb, 21 Tex., 539.

The judgment is affirmed.

AFFIRMED.

Chief Justice Moore being disqualified did not sit in this case.

[Opinion delivered June 15, 1880.]