## P. G. ROACH v. H. F. FLETCHER.

### No. 1939.

**1. Toby Land Scrip—Judicial Knowledge.**

The courts judicially know that Thomas Toby, acting as the agent of the provisional government of the republic of Texas, sold land scrip certificates issued by him as such agent, but they do not judicially or otherwise know that the power under which he acted was invalid.

**2. Same—Validity of Title Under—Toby Scrip Legislation.**

A land scrip certificate issued by Thomas Toby, September 2, 1836, was located and surveyed May 27, 1874, and patent thereon issued to an assignee January 30, 1890. Held, that the legal title to the land was thereby vested in the patentee; the Act of December 10, 1836, affording a legislative recognition of the validity of Toby's authority to issue the scrip, and the Act of December 15, 1859 (Rev. Stats., art. 3964), having the effect to preserve it from forfeiture.

**3. Same—Signature of Toby.**

The issuance of the patent to the assignee prima facie proves the genuineness of Toby's signature to the certificate, and the patentee's right thereto.

**4. Limitation—Conflict of Surveys—Adverse Possession.**

In a case of conflicting surveys, the owner of the junior survey, in order to acquire title by adverse possession and limitation to the part in conflict, must have had actual possession of such part.

APPEAL from Wilbarger. Tried below before Hon. G. A. BROWN.

*Stephens & Huff,* for appellant.—1. The court erred in holding that the land scrip issued by Thomas Toby, No. 589, to James House, on September 2, 1836, and located on the land in controversy, was void for want of authority in Thomas Toby to issue the same, and that the location and survey and patent to A. Rust Cuyler thereunder were illegal

and void. Rev. Stats., art. 3964; Pas. Digest of Laws, arts. 4395, 4398; Williamson v. Simpson, 16 Texas, 433; Robertson v. Teal, 9 Texas, 344; Hatch v. Dunn, 11 Texas, 708; Bryan v. Crump, 55 Texas, 10-11; Wheeler v. Moody, 9 Texas, 372; Magee v. Chaddoin, 30 Texas, 657, 558.

2. It having been made the duty of the Land Commissioner to pass on the validity of Toby scrip, and he having done so and patented the land thereunder, it cannot be attacked in a collateral proceeding by any one, except the State, or for fraud, etc. Rev. Stats., art. 3964; Johnson v. Smith, 21 Texas, 722; Brown v. Hicks, 22 Texas, 155.

3. The rule is, that the acts of public officers in disposing of public lands by color or claim of public authority are evidence thereof until the contrary appears by the showing of those who oppose the title under it, and deny the power by which it is professed to be granted.

Where there is only a partial conflict of surveys, the statute will not run in favor of an adverse occupant, under the junior title, if his actual possession does not extend to that part of the land in dispute which is within the conflict. Parker v. Baines, 65 Texas, 605, 608; Peyton v. Barton, 53 Texas, 298, 303; Benton v. Caldwell, 53 Texas, 408; White-head v. Foley, 28 Texas, 289; White v. Bramly, 20 How. (U. S.), 251.

*Cook & Cook,* for appellee.

HEAD, ASSOCIATE JUSTICE.—Appellant sued in trespass to try title to recover of appellee 216 4-10 acres of land patented January 30, 1890, to A. Rust Cuyler, assignee of land scrip No. 589, issued by Thomas Toby to James House, on September 2, 1836. The location and survey were made May 27, 1874.

A portion of the certificate is as follows:

"No. 589.          First.          640 acres of land.

"James House, of the City of New Orleans, and his legal representatives, are entitled to six hundred and forty acres of the public lands, to be located in the Republic of Texas, agreeably to the conditions contained in a power of attorney from the executive government of said Republic of Texas to Thomas Toby, dated on the 24th day of May, last past, and to instructions from his excellency, David G. Burnett, President of said Republic, to the said Thomas Toby, dated on the 25th day of May, last past, true copies of which documents are hereto attached for reference. * * *

"In testimony whereof, I, the said Thomas Toby, agent aforesaid, hereunto subscribe my name and affix my seal, at the City of New Orleans, on this 2d day of September, 1836.

(L. S.)          "Thomas Toby."

Appellee answered by plea of not guilty, five years statute of limitation, and disclaimer as to all of the land sued for not in conflict with H. & T. C. R. R. Co. section 30, block 14. The amount so in conflict proved to be 30 acres. That section was located October 20, 1875, and appellee proved title thereto.

The court found in favor of appellee, both upon the ground that appellant had shown no title, and appellee had shown title by limitation.

It will be observed that appellant claims under the older location, but his patent was not issued until after appellee's file.

In Todd v. Fisher, 26 Texas, 241, it is said: "It can not be questioned that when it appears from an inspection of the patent, or the statute under which it issued, that it was unauthorized by law, or that the officer from whom it emanated did not have authority to grant it, it can not be regarded in any case as evidence of title. * * * But if it emanated from competent authority, although in the preliminary proceeding upon which it is based—such, for instance, as the issuing of the certificate or making the survey—an illegality should intervene which eventuates in the grant of a patent to a party who otherwise would not have been entitled to receive it, yet as it is made by an officer authorized to make the grant, and whose duty it is to pass upon the sufficiency of the evidence on which it is issued, it appears to be held by the great weight of authority that the State, or some one having a color of title, or equitable interest in the land, can alone attack the patent for such illegality. [Citing a number of authorities.] If this is not so, all distinction between acts void and voidable is destroyed. But perhaps it may be said that the Commissioner of the General Land Office has no authority to issue a patent unless the preliminary requisitions of the law have been complied with; and if he were to do so, it consequently should be held, when this is shown, not to pass the title. Such a conclusion would subvert in a great degree the efficacy of the patent, and would leave the party in a worse condition than while his proceeding was in limine; for then, if it were held erroneous, he might correct or amend it. The question suggested, however, does not present the correct view of the matter. The commissioner has the authority or power, as the granting officer, but should not issue the patent unless the party is shown to be entitled to it. Neither should a court give an erroneous judgment. But could the commissioner, it may be asked, issue a patent to any one whom he might fancy, without a certificate or survey? Perhaps not; he probably would have no more authority to issue a patent without a certificate and survey, of apparent validity upon inspection, than a court has to render a judgment without a petition. But if a certificate and survey are presented to him, and he has acted upon them, it would seem that his decision, though erroneous, should be conclusive upon all parties, except the State or those who have some color of title to or interest in the land." This language is quoted at length, with approval, in Bryan v. Shirley, 53 Texas, 458-9.

Also, in Miller v. Brownson, 50 Texas, 591: "The patent issued to appellee by the State for the land for which he sues is certainly prima facie evidence of title, and warranted the judgment in his favor for the land, unless appellant showed a valid grant of it to some one else previous to the date of the location and survey upon which appellee's patent was issued, or that appellant had the prior and superior equitable title

to the land at the date of said patent. The burden of proof establishing one or the other of these propositions was unquestionably on appellant."

The court below found the patent under which appellant claims, to be void upon the ground that Thomas Toby had no power to issue the certificate by virtue of which the location was made. As we have seen from the authorities above quoted, the burden was upon appellee to establish this fact, if indeed it would constitute a defense at all. There was no evidence to prove a want of authority in Toby, and if the court's action can be sustained, it must be upon the theory that it judicially knew that fact. We think the court did judicially know that Toby, acting as the agent of the provisional government of the Republic of Texas, sold a large number of certificates of the kind in question; but we are of opinion that the court did not judicially, or otherwise, know that the power under which he acted was invalid.

On December 10, 1836, a short time after the issuance of this certificate, an act was passed by the first congress of the Republic, the first section of which authorized the President to sign and transmit to Toby for sale, land scrip to the amount of 500,000 acres, and in the second section of this act it is recited: "That the said Toby, with the proceeds arising from the sale of said scrip, be and is hereby authorized and required to fulfill all legal obligations into which he may have entered as agent of this government, on the faith of the authority given him by the President ad interim, for the selling of land scrip; and that he be authorized and required to pay all legal debts contracted on the faith of the same." This seems to be a clear legislative recognition of the validity of the authority recited by Toby in the certificate in question to have been given to him. 1 Sayles' Early Laws of Texas, art. 245.

In 1859 an act was passed directing that "all genuine headright certificates, or genuine Toby or Bryan scrip * * * that have not been presented to the Court of Claims within the time prescribed by law, shall be recognized and patented the same as though they had been presented and approved by the Commissioner of Claims. * * * but should any fraudulent certificate for land, by accident, inadvertence or design, be perfected into patent under this act, said patent shall be void, and no title shall vest." This act was carried into the Revised Statutes, and seems to be still in force. Rev. Stats., art. 3964.

We think the court should have found, after this great lapse of time, that Toby was in fact given the authority which he recited in the certificate that he had, and that his acts, if any defect in his powers originally existed, were subsequently ratified and approved by the legally constituted governments of the Republic and State.

We are also of opinion that the act last quoted had the effect to prevent the forfeitures which were attempted to be decreed for failure to comply with the act of 1840 (Sayles' Civil Statutes, art. 3907) and the act of 1856 (2 Sayles' Early Laws of Texas, art. 2673, par. 2).

We are also of opinion that the issuance of the patent to Cuyler dispensed with the necessity for the production of those claiming under him of any evidence of the genuineness of Toby's signature to the certificate, and of the patentee's right thereto.

In Mitchell v. Bass, 26 Texas, 376, it is said: "The law authorized the Commissioner of the Land Office to issue the patent to the assignee upon his presenting a sufficient and properly authenticated chain of transfer from the original grantee down to himself. The commissioner was made the judge of the sufficiency of the transfer to enable him to pass the title from the State to the assignee of the certificate. As between the State and the patentee, the patent was certainly evidence of title in the latter. The decision of the commissioner would not be conclusive against the grantee or any assignor of the certificate of the genuineness of the assignment; but as between the patentee and strangers, the patent is at least prima facie evidence that the title is in the patentee, and relieves him of the necessity of proving the assignment in an action of trespass to try title against a party who does not claim under the certificate on which the patent issues."

Also, in Deen v. Wills, 21 Texas, 649, it is said: "The certificate upon which the patent issued under which the defendant holds, was issued in 1838. His survey was made in 1846, and he has been in actual possession since the fall of that year, having received a conveyance in 1847. The patent is prima facie evidence that the genuineness of the certificate had been duly established, and that it was valid from its date. It devolved on the plaintiff to prove that it had not been established in any of the modes known to the law."

We think what we have said sufficiently disposes of the other objections found by the court below to appellant's title, but we have had more difficulty in deciding as to appellee's title under the five years' statute of limitation. The evidence is undisputed that appellee was in actual possession of a part of section 30, claiming all of it under a deed duly registered, and paying all taxes thereon, for more than five years before appellant took actual possession of any part of the survey claimed by him, and before the institution of this suit, but such possession did not extend to any part of the 30 acre conflict.

The authorities in this State upon this question are not in harmony. The case of Evitts v. Roth, 61 Texas, 81, seems to hold very clearly that where two surveys are in conflict, actual possession by the owner of a part of the junior grant will give him constructive possession to the boundaries described in the deed under which he holds, including the conflict, until the owner of the older title takes actual possession of some part of his tract; and this view seems to be supported by some of the language used in the opinion in the case of Hunnicutt v. Peyton, 102 U. S., 333. The prevailing view in this State, however, seems to be, that in such case the constructive possession of the real owner is not disturbed until the owner of the junior survey takes actual possession of some part of the conflict. Parker v. Baines, 65 Texas, 605; Peyton

v. Barton, 53 Texas, 298; Frisby v. Withers, 61 Texas, 143; Turner v. Moore, 81 Texas, 206.

Following these decisions, we hold that appellee failed to show title by limitation to the 30 acres in conflict with appellant's older survey.

The judgment of the court below will be reversed and here rendered in favor of appellant for all of the land sued for by him.

*Reversed and rendered.*

Delivered October 5, 1895.